PEOPLE v GATSKI

Docket No. 243581. Submitted January 8, 2004, at Grand Rapids. Decided
     January 20, 2004, at 9:00 A.M. Leave to appeal sought.
     Frank Gatski was charged with recreational trespass, MCL
     324.73102(1), in the 64-A District Court. The court, Raymond P.
     Voet, J., denied the defendant's motion to dismiss because the rec-
     reational trespass statute did not grant the defendant unfettered
     right to enter onto a dam; the dam owner, Consumers Energy, had
     the right to bar trespassers from its property; and the defendant
     had misinterpreted the language of subsection 73102(3). On appeal,
     the Ionia Circuit Court, Charles H. Miel, J., dismissed the charge
     against the defendant on the grounds that subsection 73102(3)
     allowed the defendant to enter upon the dam's grating and that
     Consumers Energy did not have the right to regulate fishing. The
     people appealed, arguing that the circuit court had improperly
     ruled that the recreational trespass statute afforded the defendant
     an exception allowing him to fish while standing on the dam's
     grating.

     The Court of Appeals held:

     1. MCL 324.73102(3) provides an exception to the general tres-
     pass rule so that a fisherman engaged in recreational activity in a
     navigable river may enter upon posted property only to avoid a nat-
     ural or artificial hazard or obstruction in the water. Unless the
     defendant can prove the necessity of entering onto the dam grating
     to avoid a natural or artificial hazard or obstruction, he would not
     be excused from his violation of MCL 324.73102(1), the general rule
     that a person may not enter upon the property of another for recre-
     ational activities without the consent of the owner when the prop-
     erty is conspicuously posted to prohibit trespassing.

     2. The Federal Energy Regulatory Commission has preemptive
     authority regarding the restriction of the public from entry upon a
     dam property. The circuit court erred by failing to address the
     safety issues presented in article 18 of the commission's license
     terms and conditions, which article allows the licensee of a dam to
     restrict the portions of the project waters, adjacent lands, and pro-
     ject facilities as necessary for the protection of life, health, and
     property.

     Affirmed.

TRESPASS — RECREATIONAL TRESPASS — NAVIGABLE RIVERS.

> A person may not enter upon the property of another for recreational activities without the consent of the owner when the property is conspicuously posted to prohibit trespassing; an exception is recognized in the case where a fisherman engaged in recreational activity in a navigable river enters upon a privately owned dam posted against entry for the purpose of avoiding a natural or artificial hazard or obstruction (MCL 324.73102[1], [3]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *Gail Benda*, Prosecuting Attorney, and *Kevin L. Tyrrell*, Assistant Prosecutor, for the people.

*Patrick M. Duff* for the defendant on appeal.

Before: MARKEY, P.J., and MURPHY and TALBOT, JJ.

TALBOT, J. We granted the prosecution leave to appeal the Ionia Circuit Court order that dismissed the charge of recreational trespass, MCL 324.73102(1). The question before us is whether subsection 73102(3) of the recreational trespass statute allows recreational fishing on the property of a privately owned dam when the property is posted in a conspicuous manner against trespassing. We conclude that it does not. Accordingly, we reverse the order of the circuit court and remand the case for proceedings consistent with this opinion.

## I. FACTS AND PROCEDURAL HISTORY

The facts are not disputed. Defendant was fishing in Grand River near the Webber Dam in Lyons Township. The dam is owned and operated by Consumers Energy, and the dam grating was surrounded by "no trespassing" signs strung on a guide cable across the river. While fishing, defendant hooked a large fish, but the fish swam into a gap between the grating and the

coffer of the dam. In an attempt to guide the fish out of the gap, defendant waded through the river, passed the "no trespassing" signs at the dam's grating, and stepped onto the grating that was beneath the river water. Defendant believed the "no trespassing" signs referred only to the dam's powerhouse and transformers. A conservation officer who spotted defendant standing on the grating testified that defendant appeared to be struggling with a tangled fish line. The officer motioned defendant to approach the bank of the river. Defendant cut the fish line and approached the officer. Defendant was then cited for recreational trespass, MCL 324.73102(1).

Defendant moved to dismiss the charge, arguing that he had a right to fish in that area of the river under an exception in the recreational trespass statute, MCL 324.73102(3). Defendant also asserted that Consumers Energy had no right to restrict his riparian right to the stream water or to regulate fishing at the dam. The prosecutor, on the other hand, argued that defendant misinterpreted the language of subsection 73102(3). The prosecutor asserted that subsection 73102(3) did not allow defendant to fish on the grating of the dam. The prosecutor also argued that Consumers Energy, being authorized by the state to construct and operate the dam, was allowed as a property owner to restrict persons from entering onto the dam. The district court agreed with the prosecutor and denied defendant's motion to dismiss the charge on the grounds that the recreational trespass statute did not grant defendant unfettered rights to enter onto the dam and that Consumers Energy had the right to bar trespassers from its property. Defendant appealed to the Ionia Circuit Court. The circuit

court dismissed the charge against defendant on the grounds that subsection 73102(3) allowed defendant to enter upon the dam's grating and that Consumers Energy did not have the right to regulate fishing.

## II. ANALYSIS

### A. RECREATIONAL TRESPASS

The prosecutor argues that the circuit court improperly ruled that the recreational trespass statute afforded defendant an exception. The recreational trespass statute, MCL 324.73102, prohibits recreational activity on the property of another where the property is posted in a conspicuous manner against entry, as follows:

> (1) Except as provided in subsection (4) [allowing entry by an unarmed person to retrieve a hunting dog], a person shall not enter or remain upon the property of another person, other than farm property or a wooded area connected to farm property, to engage in any recreational activity or trapping on that property without the consent of the owner or his or her lessee or agent, if either of the following circumstances exists:
>
>   *  *  *
>
> (b) The property is posted in a conspicuous manner against entry. . . . [MCL 324.73102(1)(b).]

It is undisputed that defendant was engaged in a recreational activity in an area of the river near the dam, that the dam is owned by Consumers Energy, that Consumers Energy placed conspicuous "no trespassing" signs against entry onto the dam, and that defendant disregarded the signs and entered onto the grating of the dam. Defendant argues that he did not

commit recreational trespass because subsection 73102(3) of the statute afforded him with an exception, as follows:

> On fenced or posted property or farm property, a fisherman wading or floating a navigable public stream may, without written or oral consent, enter upon property within the clearly defined banks of the stream or, without damaging farm products, walk a route as closely proximate to the clearly defined bank as possible when necessary to avoid a natural or artificial hazard or obstruction, including, but not limited to, a dam, deep hole, or a fence or other exercise of ownership by the riparian owner. [MCL 324.73102(3).]

Defendant urges this Court to read two separate exceptions into the above provision that are separated by the word "or" that follows the word "stream." According to defendant's reading of the statute, (1) a fisherman wading or floating in a navigable stream may simply enter upon the posted property of a dam without permission provided that the dam is within the clearly defined banks of the stream or (2) a fisherman wading or floating in a navigable stream may walk a route near the defined banks only when necessary to avoid a natural or artificial hazard or obstruction such as a dam. In other words, defendant argues that the requirement to avoid a natural or artificial hazard or obstruction does not relate to the first part of the provision and that a fisherman may enter onto the property of a dam at any time if that portion of the property is located in the river between identifiable banks. Meanwhile, the prosecutor contends that the above provision should be read to allow a fisherman to enter upon the posted property of a dam only when necessary to avoid a natural or artificial hazard or obstruction.

This issue presents a question of statutory interpretation. Statutory interpretation is a question of law that is reviewed de novo. *Oakland Co Rd Comm'rs v Michigan Prop & Cas Guaranty Ass'n*, 456 Mich 590, 610; 575 NW2d 751 (1998). The primary goal of judicial interpretation of statutes is to ascertain and give effect to the intent of the Legislature. *Gladych v New Family Homes, Inc*, 468 Mich 594, 597; 664 NW2d 705 (2003). Initially, we review the language of the statute itself. If the statute is unambiguous on its face, the Legislature is presumed to have intended the meaning plainly expressed and further judicial interpretation is not permissible. *Colucci v McMillin*, 256 Mich App 88, 94; 662 NW2d 87 (2003). "Only where the statutory language is ambiguous may a court properly go beyond the words of the statute to ascertain legislative intent." *Sun Valley Foods Co v Ward*, 460 Mich 230, 236; 596 NW2d 119 (1999). "An ambiguity can be found only where the language of a statute as used in its particular context has more than one common and accepted meaning." *Colucci, supra* at 94.

The focal point in the language of subsection 73102(3) is the use of the disjunctive "or" after the word "stream" in the first part of the provision. It is well-established that the word "or" is often misused in statutes and it gives rise to an ambiguity in the statute because it can be read as meaning either "and" or "or." *People v Humphreys*, 221 Mich App 443, 451-452; 561 NW2d 868 (1997). Generally, "or" is a disjunctive term, but the popular use of the word is frequently inaccurate and this misuse has infected statutory enactments. Their literal meanings should be followed if they do not render the statute dubious, but

one will be read in place of the other if necessary to put the meaning in proper context. *Id.*

We conclude that subsection 73102(3) is not well drafted, and the particular use of the word "or" and placement of commas in the text could lead reasonable minds to differ with respect to whether the provision creates the different types of exceptions that the parties assert. This is evidenced by the rulings of the district and circuit courts that arrived at opposite conclusions regarding what the statute actually means.

Therefore, this Court may go beyond the words of the statute in order to ascertain legislative intent. *Sun Valley Foods Co, supra.* In such a case, the rules of statutory construction require that the intent of the Legislature, once ascertained, "must prevail regardless of any conflicting rule of grammar or statutory construction." *Green Oak Twp v Munzel,* 255 Mich App 235, 240; 661 NW2d 243 (2003). We must consider the object of the statute, the harm it is designed to remedy, and apply a reasonable construction that best accomplishes the statute's purpose. *People v Lawrence,* 246 Mich App 260, 265; 632 NW2d 156 (2001). In construing a statute, "the court should presume that every word has some meaning and should avoid any construction which would render any part of a statute surplusage or nugatory." *People v Borchard-Ruhland,* 460 Mich 278, 285; 597 NW2d 1 (1999). Provisions must "be read in the context of the entire statute so as to produce an harmonious whole." *People Williams,* 236 Mich App 610, 613; 601 NW2d 138 (1999). Though a court may not abrogate the plain language of a statute in order to avoid absurd results, see *People v McIntire,* 461 Mich 147, 155-156;

599 NW2d 102 (1999), it is appropriate for a court to avoid absurd results when attempting to determine the Legislature's intent regarding an ambiguous statute. *People v Wilson*, 257 Mich App 337, 346; 668 NW2d 371 (2003).

MCL 324.73102 of the Natural Resources and Environmental Protection Act, MCL 324.101 *et seq.*, provides for the control of recreational trespass. Subsection 73102(1) provides the general rule that an individual may not enter upon property for recreational activities without the consent of the owner when the property conspicuously prohibits trespassing. Subsections 73102(2), (4), and (5) provide the specific exceptions to the rule. Subsection 73102(2) prohibits a person from entering upon farm property for recreational activity without the consent of the owner regardless of whether the property is fenced, enclosed, or posted. Subsection 73102(4) allows a person to enter upon the property of another to retrieve a hunting dog provided that the person is unarmed and provided that the property owner had not previously prohibited the person from entering the property. Subsection 73102(5) concerns the nature of the consent that a property owner may give to a person entering upon the property and the effect of the lack of consent. From subsections 73102(2) and (4), we conclude that the Legislature intended a person's entry upon the property of another to be conditioned. There is nothing in the above provisions that allows a person engaged in recreational activity to simply enter and remain upon the property of another to continue the recreational activity without the owner's consent.

The subsection at issue here, subsection 73102(3), is no different. We cannot read into its language anything that would grant a fisherman permission to unconditionally enter and remain on the property of another for recreational activity. Defendant's proposed construction would expand this subsection to absurdly create an unlimited right to enter property located within the banks of a river for any reason. Such a proposed construction would not accurately represent the legislative intent behind the statute and would render the latter portion of the subsection nugatory. Thus, we conclude that subsection 73102(3) provides an exception to the general trespass rule to allow a fisherman engaged in recreational activity to enter upon posted property only to avoid a natural or artificial hazard or an obstruction in the water.

Therefore, unless defendant can prove that it was necessary for him to enter onto the grating to avoid a natural or artificial hazard or obstruction, he would not be excused from otherwise violating subsection 1 of MCL 324.73102.

### B. FEDERAL PREEMPTION

The prosecutor next argues that the circuit court erred in holding that Consumers Energy could not restrict the riparian rights of a person from fishing at the dam. Specifically, the prosecutor maintains that the circuit court erred in holding that article 18 of the Federal Energy Regulatory Commission terms and conditions of the license was inapplicable in this case.

This issue presents a question of law that we review de novo on appeal. *People v Webb*, 458 Mich

265, 274-275; 580 NW2d 884 (1998). "We review de novo issues of federal constitutional law." *J & J Const Co v Bricklayers & Allied Craftsmen, Local 1*, 468 Mich 722, 729; 664 NW2d 728 (2003).

In this case, defendant argued that Consumers Energy, as a riparian owner of the stream waters, improperly restricted his right to fish. The prosecutor presented evidence indicating that Webber Dam was constructed pursuant to a federal license issued by the Federal Energy Regulatory Commission, which regulates interstate commerce on navigable waters. While the district court agreed with the prosecution's argument that federal licensing preempts state control over public navigable waters, the circuit court held that the right to build a dam does not include the right to regulate fishing in the river.

The record indicates that defendant did not dispute the fact that Consumers Energy was allowed to construct the dam. It is also undisputed that the Grand River was a public navigable river.[1] Because the Grand River is a navigable river, it is the public property of the nation and subject to all requisite legislation by Congress. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 196; 521 NW2d 499 (1994). As our Supreme Court held, our state's power of navigation " 'is limited by the superior power of the general Government to secure the uninterrupted navigation of all navigable streams within the limits of the United States.' " *Id.*, quoting *McMorran Milling Co v C H Little Co*, 201 Mich 301, 308; 167 NW2d 990

---

[1] On appeal, defendant attempts to argue that the Grand River is not a public navigable river. We disagree. Defendant does not raise a cross-appeal to dispute the circuit court's acceptance of defendant's express argument below that the Grand River is a public navigable river.

(1918). Congress has delegated to the Federal Energy Regulatory Commission (FERC) the authority to license the construction and operations of dams. 16 USC 808. Article 18 of the terms and conditions for obtaining a FERC license to construct a project on the navigable waters of the United States provides:

> So far as is consistent with proper operation of the project, the Licensee shall allow the public free access, to a reasonable extent, to project waters and adjacent project lands owned by the Licensee for the purpose of full public utilization of such lands and waters for navigation and for outdoor recreational purposes, including fishing and hunting; *Provided,* That the Licensee may reserve from public access such portions of the project waters, adjacent lands, and project facilities as may be necessary for the protection of life, health, and property.

Although the circuit court failed to address the safety issues as presented in article 18, defendant never disputed the prosecutor's assertion below that Consumers Energy placed the "no trespassing" signs to restrict public access to the area directly in front of the water release gates of the dam, which gates pose a significant risk to safety and life if the gates were opened while a person was within that area. Thus, we conclude that the circuit court should have recognized the preemptive nature of federal authority in this matter.

The order of the Ionia Circuit Court is reversed, and the case is remanded. We do not retain jurisdiction.