PEOPLE v ADKINS

Docket No. 260451. Submitted July 13, 2006, at Detroit. Decided August 10, 2006, at 9:00 a.m. Leave to appeal sought.

Lowell Gene Adkins pleaded guilty in the Oakland Circuit Court of attempting or preparing to commit child sexually abusive activity, MCL 750.145c(2); and using a computer or the Internet to attempt to commit child sexually abusive activity, MCL 750.145d(1)(a) and (2)(f), after initiating a sexually explicit Internet dialogue with an undercover police officer posing as a 14-year-old boy, and arranging to meet him for the purpose of engaging in sexual activity. The trial court, Edward Sosnick, J., sentenced the defendant to one to 20 years' imprisonment. The defendant then filed a motion to withdraw his plea, arguing that there was an insufficient factual basis for the plea. The trial court denied the motion, and this Court granted the defendant's delayed application for leave to appeal.

The Court of Appeals *held*:

The plain language of MCL 750.145c(2) prohibits the conduct in which the defendant admitted engaging, namely, attempting or preparing to arrange for child sexually abusive activity. The fact that the intended target was not in fact a child is irrelevant, because the statute does not require that the preparations actually proceed to the point of involving a child. The defendant's argument that the statute's legislative history and the severity of the punishment indicate a legislative intent to punish only child pornographers is unpersuasive because the statutory language is plain and unambiguous, making statutory interpretation unnecessary.

Affirmed.

CRIMINAL LAW — CHILD SEXUALLY ABUSIVE ACTIVITY — INVOLVEMENT OF CHILDREN.

A person may be convicted of attempting or preparing to arrange for child sexually abusive activity even if the solicited "child" is actually an adult police officer (MCL 750.145c[2]).

*Michael A. Cox*, Attorney General, *Thomas L. Casey*, Solicitor General, *David Gorcyca*, Oakland County Prosecutor, *Joyce Todd*, Appellate Division Chief, and *Kathryn G. Barnes*, Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Rolf E. Berg*) for the defendant.

Before: FITZGERALD, P.J., and SAAD and COOPER, JJ.

SAAD, J. Defendant pleaded guilty of attempting or preparing to commit child sexually abusive activity, MCL 750.145c(2); and using a computer or the Internet to attempt to commit child sexually abusive activity, MCL 750.145d(1)(a) and (2)(f), after initiating a sexually explicit Internet dialogue with, and arranging to meet, an undercover police officer posing as a 14-year-old boy. The trial court sentenced defendant to concurrent prison terms of one to 20 years for each conviction, and this Court granted defendant's delayed application for leave to appeal. We affirm.

Defendant challenges the trial court's denial of his motion to withdraw his guilty plea and argues that the court erred when it ruled that MCL 750.145c(2) applies to his admitted conduct. "In reviewing the adequacy of the factual basis for a plea, this Court examines whether the factfinder could properly convict on the facts elicited from the defendant at the plea proceeding." *People v Hogan*, 225 Mich App 431, 433; 571 NW2d 737 (1997) (internal quotation omitted). "When first made after sentencing, a motion to withdraw a guilty plea is addressed to the sound discretion of the trial court, and the trial court's decision will not be disturbed unless there is a clear abuse of discretion resulting in a miscarriage of justice." *People v Ovalle*,

222 Mich App 463, 465; 564 NW2d 147 (1997). To the extent this issue involves an underlying question of statutory construction, "[w]hether conduct falls within the statutory scope of a criminal statute is a question of law that is reviewed de novo on appeal." *People v Rutledge*, 250 Mich App 1, 4; 645 NW2d 333 (2002). The construction of statutory language is governed by the following principles:

> Our primary task in construing a statute is to discern and give effect to the intent of the Legislature. The words contained in a statute provide us with the most reliable evidence of the Legislature's intent. In ascertaining legislative intent, this Court gives effect to every word, phrase, and clause in the statute. We must consider both the plain meaning of the critical words or phrases as well as their placement and purpose in the statutory scheme. This Court must avoid a construction that would render any part of a statute surplusage or nugatory. The statutory language must be read and understood in its grammatical context, unless it is clear that something different was intended. If the wording or language of a statute is unambiguous, the Legislature is deemed to have intended the meaning clearly expressed, and we must enforce the statute as written. A necessary corollary of these principles is that a court may read nothing into an unambiguous statute that is not within the manifest intent of the Legislature as derived from the words of the statute itself. [*People v Hill*, 269 Mich App 505, 514-515; 715 NW2d 301 (2006) (citations and internal quotations omitted).]

In 2002, at the time of the charged crimes and the guilty plea hearing, MCL 750.145c(2) provided as follows:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, or finances, *or a person who attempts*

*or prepares or conspires to arrange for, produce, make, or finance any child sexually abusive activity* or child sexually abusive material is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $100,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child, or that person has not taken reasonable precautions to determine the age of the child. [Emphasis added.]

Relevant to the analysis in this case, § 145c defines "child sexually abusive activity" as "a child engaging in a listed sexual act."[1] Section 145c further defines "child" as an unemancipated "person who is less than 18 years of age,"[2] and provides that a "listed sexual act" "means sexual intercourse, erotic fondling, sadomasochistic abuse, masturbation, passive sexual involvement, sexual excitement, or erotic nudity."[3]

We conclude that the language of § 145c(2) clearly and unambiguously imposes criminal liability on three distinct groups of "person[s]," provided that at the time of their actions, the persons met the requisite knowledge element.[4] Section 145c(2) delineates the member of its first described category as "[a] person who persuades, induces, entices, coerces, causes, or knowingly

---

[1] In 2002, this definition of "child sexually abusive activity" appeared in MCL 750.145c(1)(h).

[2] In 2002, the definition of "child" appeared in MCL 750.145c(1)(a).

[3] In 2002, this definition of "listed sexual act" was located in MCL 750.145c(1)(e). Section 145c(1) also contains definitions for each of the specific components comprising "listed sexual acts." Defendant does not appear to dispute that the explicit sexual contact he proposed to "Eric" via computer fell within the definition of listed sexual acts in effect in 2002, more specifically, "sexual intercourse." MCL 750.145c(1)(*l*).

[4] In this case, defendant does not contest that his conduct in contacting a perceived 14-year-old boy and inviting him to a meeting for the purpose of engaging in sexual contact satisfies the knowledge element in § 145c(2).

allows a child to engage in a *child sexually abusive activity for the purpose of producing any child sexually abusive material.*"[5] (Emphasis added.) Defendant does not qualify for inclusion in this first category of persons because he undisputedly did not pursue involvement in child sexually abusive activity *for the purpose of creating child sexually abusive material.* The disjunctive "or" immediately following the first category of persons signals that § 145c(2) thereafter describes other persons subject to criminal liability. See *People v Gatski*, 260 Mich App 360, 365-366; 677 NW2d 357 (2004).

The second and third groups of persons subject to a criminal penalty under § 145c(2) are related. A plain reading of the statutory language reflects that in the second group subject to criminal liability, the statute places "a person who arranges for, produces, makes, or finances . . . any child sexually abusive activity or child sexually abusive material." Again, the disjunctive "or" immediately following "a person who arranges for, produces, makes, or finances" child sexually abusive activity or material separates the second group of criminal actors from the third category. See *Gatski, supra* at 365-366.

Into the third group the statute places "a person who *attempts or prepares* or conspires to arrange for, produce, make, or finance any child sexually abusive activity *or* child sexually abusive material." (Emphasis

---

[5] According to the version of § 145c(1)(i) in effect in 2002,

> "[c]hild sexually abusive material" means a developed or undeveloped photograph, film, slide, electronic visual image, computer diskette, or sound recording of a child engaging in a listed sexual act; a book, magazine, or other visual or print medium containing such a photograph, film, slide, electronic visual image, or sound recording; or any reproduction, copy, or print of such a photograph, film, slide, electronic visual image, book, magazine, other visual or print medium, or sound recording.

added.) In the third group, the statute clearly and unambiguously broadens the proscribed second group to include persons who attempt, conspire, or even prepare to engage in actions prohibited within group two, specifically the arrangement for or production, making, or financing of "*any* child sexually abusive activity *or* child sexually abusive material." (Emphasis added.) Again, the disjunctive "or" signifies that the second and third groups of persons face criminal liability for participation in the arrangement for or production, making or financing of *either* child sexually abusive activity *or* child sexually abusive material. See *Gatski, supra* at 365-366. Furthermore, the language defining the second and third groups of criminal actors eliminates the requirement applicable in the first group that the proscribed actions must have been taken for the purpose of creating child sexually abusive material. The Legislature thus omitted from the second and third groups subject to criminal liability any requirement that the individuals therein must have acted for the ultimate purpose of creating any child sexually abusive material, a specific requirement applicable to the first group of criminals. See *Houghton Lake Area Tourism & Convention Bureau v Wood*, 255 Mich App 127, 135; 662 NW2d 758 (2003) (observing that "this Court should assume that an omission [in a statutory provision] was intentional").

Defendant's admissions place him squarely within the clear and unambiguous definition of the third group of persons on whom § 145c(2) imposes criminal liability. At defendant's plea hearing, the trial court elicited the following factual basis for defendant's guilty plea:

> *The Court*: Okay. Now, these offenses occurred in what city or town?
>
> *Defendant*: Waterford.

*The Court*: And that [sic] they occurred on or about February 6, 2002 to February 10, 2002?

*Defendant*: That is correct.

*The Court*: Now, at that time did you have a computer?

*Defendant*: Yes.

*The Court*: And were you computer literate in a sense of using the [I]nternet to communicate with other people?

*Defendant*: Yes.

*The Court*: And did there come a time when you communicated with another person with the idea or intent that sexual activity might occur between you and this other person?

*Defendant*: Yes, I was.

*The Court*: Okay. Well, . . . . Did there come a time when you attempted or made efforts to engage in child sexually abusive activity, mainly having sex with a person who was identified to you as being 14 years of age?

*Defendant*: Or arranged.

*The Court*: Or arranged?

*Defendant*: Yes.

*The Court*: Now, with regard to the [I]nternet, did you come in contact with someone posing as Eric Blake?

*Defendant*: Yes.

*The Court*: Or the name of the Blaze Kid?

*Defendant*: Yes.

*The Court*: Did you and he talk back and forth in engaging in sexual activity between the two of you?

*Defendant*: Yes.

*The Court*: And did there come a time when he indicated he was 14 years of age?

*Defendant*: Yes.

*The Court*: Okay. And did you then make arrangements or attempt to have a meeting with him for the purpose of engaging in sexual activity?

*Defendant*: My attorney says yes.

*The Court*: Your attorney is not the one who is pleading guilty. . . . [T]he jest [sic, gist] of this offense is that you've made a communication on the [I]nternet with someone who you believe to be 14 years of age and attempted or arranged to meet him for purposes of sexual activity. If that's what you did then fine, if that's not what you did then tell me that and we'll get a jury and move on.

*Defendant*: No, they represented themselves to be fourteen.

*The Court*: Okay. So did you believe that you would be having sex with a 14 year old if you were able to get together for a meeting?

*Defendant*: There's a possibility of that, yes.

These admissions reflect that defendant "attempted or prepared . . . to arrange for . . . child sexually abusive activity," and thus place him within the plain language of § 145c(2). Specifically, defendant admitted that he communicated in an explicitly sexual manner with perceived 14-year-old Eric in an attempt to arrange to meet him for the purpose of engaging in sexual contact.

In *People v Thousand*, 241 Mich App 102, 104-105, 113-117; 614 NW2d 674 (2000), rev'd in part on other grounds 465 Mich 149 (2001), this Court considered the defendant's potential guilt under MCL 750.145c(2), in light of the facts that the defendant had communicated via computer in a sexually explicit manner with 14-year-old "Bekka," who in reality was an undercover deputy sheriff, and made arrangements to meet Bekka "for sexual activity." The prosecutor appealed the trial court's dismissal of three charges: solicitation to commit third-degree criminal sexual conduct, attempted distribution of obscene material to a minor, and child sexually abusive activity. In relevant part, as in this case, the Court contemplated whether the defendant

fell within the third category of persons discussed in MCL 750.145c(2), specifically, whether the defendant was "a person who attempts or prepares or conspires to arrange for, produce, make or finance any child sexually abusive activity or child sexually abusive material." *Id.* at 114. In addressing the defendant's claim that the doctrine of impossibility precluded a finding of his guilt under § 145c(2), this Court reasoned as follows:

> If the child sexually abusive activity statute merely punished actually engaging in child sexually abusive activity and, therefore, defendant was charged with attempted child sexually abusive activity, we would likely have to conclude that this . . . presented a case of legal impossibility. . . . [I]t would be legally impossible to engage in child sexually abusive activity if the individual with whom the defendant intends to engage in such activity is not, in fact, a child.

> However, the child sexually abusive activity statute is not so narrowly drawn. As the portion of the statute emphasized above indicates, a person may violate the statute by *preparing* for any child sexually abusive activity. It is, of course, ultimately for the jury to decide if the conduct defendant proposed to "Bekka" constituted child sexually abusive activity and whether defendant did, in fact, prepare to engage in such activity. That is, we are not called on in this case to determine whether defendant would be guilty of the charged offense if, in fact, "Bekka" had been a fourteen-year-old girl.

> Our analysis assumes, without deciding, that defendant would, in fact, be guilty of child sexually abusive activity if "Bekka" had been a fourteen-year-old girl as defendant thought rather than the adult male that Deputy Liczbinski really is. The question before us is whether it makes a difference to the issue of defendant's guilt that "Bekka" is, in fact, an adult rather than a fourteen-year-old girl. We conclude that it does not.

> *Because the child sexually abusive activity statute requires only mere preparation, rather than actual abusive*

*activity, we are satisfied that a situation such as the case at bar comes within the provision of the statute.* Black's Law Dictionary (5th ed), pp 1063-1064, defines "preparation" as follows:

"With respect to criminal offense, consists in devising or arranging means or measures necessary for its commission, while attempt is direct movement toward commission after preparations are made."

We do not believe that it is legally significant that "Bekka" was an adult rather than a child in determining whether defendant made preparations to engage in child sexually abusive activity. *It does not change the fact that defendant was endeavoring to find a child, to entice a child to engage in sexual activity, or to arrange to meet a child for sexual activity.* Assuming defendant's conduct constitutes preparing to arrange for child sexually abusive activity in general terms, then defendant engaged in such conduct whether "Bekka" was a fourteen-year-old girl or an adult male. *In either case, defendant was preparing to arrange for child sexually abusive activity by chatting with and enticing someone he believed to be a child.* The fact that "Bekka" was not a child merely means that defendant would not ultimately be successful in engaging in child sexually abusive activity. *Defendant's criminal responsibility, however, is not premised on his success, but on his preparations.* [*Thousand, supra* at 114-116 (emphasis added).]

In distinguishing a case cited by the defendant that involved a different criminal statute, the Court reiterated that the cited case was "inapplicable to the child sexually abusive activity statute because [the latter] statute does not actually require conduct involving a minor. Rather, *it only requires that the defendant prepare to arrange for child sexually abusive activity.* The statute does not require that those preparations actually proceed to the point of involving a child." *Id.* at 117 (emphasis added).

In summary, although addressing § 145c(2) in the context of the defendant's legal impossibility challenge,

this Court held in *Thousand* that an individual like defendant, who had engaged in sexual communications with a perceived minor and attempted to set up a meeting to share sexual contact, was subject to criminal liability under § 145c(2) as "a person who attempts or prepares or conspires to arrange for, produce, make or finance any child sexually abusive activity or child sexually abusive material." *Id.* at 114-116.[6] We reject defendant's contention that this Court's analysis in *Thousand* involving § 145c(2) is dictum. In *Thousand*, this Court construed § 145c(2) as applying to acts of preparation to arrange for child sexually abusive activity. *Id.* This interpretation of § 145c(2) was necessary to the Court's conclusion that the defendant's proffered legal impossibility defense did not preclude his liability for acts of mere preparation, which closely resembled the instant defendant's acts of preparation in this case.

Defendant argues repeatedly that the Legislature could not have intended to impose a potential 20-year prison term on an individual who engaged in conduct that did not rise to the level of producing or attempting to produce child pornography. We observe, however,

---

[6] The Supreme Court's subsequent, partial reversal of this Court's decision in *Thousand* does not affect the analysis set forth above. The Supreme Court "granted leave in th[e] case to consider whether the doctrine of 'impossibility' provides a defense to a charge of attempt to commit an offense prohibited by law under MCL 750.92, or to a charge of solicitation to commit a felony under MCL 750.157b." *Thousand, supra,* 465 Mich at 151. With respect to this Court's analysis involving MCL 750.145c(2), the Supreme Court noted the following:

The Court of Appeals concluded that, because the child sexually abusive activity statute proscribes mere *preparation* to engage in such activity, the circuit court erred in dismissing that charge on the basis of the doctrine of legal impossibility. We denied defendant's application for leave to appeal from this portion of the Court of Appeals opinion, and this charge is not presently before us. [*Thousand, supra,* 465 Mich at 155 n 4 (emphasis in original).]

that the plain language of § 145c(2) unambiguously encompasses defendant's attempt or preparation to engage in child sexually abusive activity. When statutory language is plain, the rules of statutory construction do not allow a party to assail the clear language employed through evidence of alleged legislative intent. *Hill, supra* at 512, 517, 520, 525-526.

Furthermore, defendant misplaces his reliance on *People v Ward*, 206 Mich App 38, 40-43; 520 NW2d 363 (1994), in which this Court contemplated the legislative intent behind MCL 750.145c to determine whether convictions under both § 145c and MCL 750.520b(1)(c) violated double jeopardy principles. The convictions arose from the defendant's creation of "still photographs and videotapes . . . of [13- and 14-year-old] girls in nude or erotic poses." *Id.* at 40. Regarding the harm the Legislature sought to prevent in enacting § 145c, this Court observed in *Ward* that the "offense of engaging a child in sexually abusive activity . . . focuses on protecting children from sexual exploitation, assaultive or otherwise," and that "[t]he purpose of the statute is to combat the use of children in pornographic movies and photographs, and to prohibit the production and distribution of child pornography." *Id.* at 42-43. But this Court's characterization of the legislative history behind § 145c cannot defeat the plain statutory language of § 145c(2) that also provides for a defendant's guilt when he attempts or prepares "to arrange for, produce, make, or finance any child sexually abusive activity." We lastly note that defendant mistakenly seeks to invoke the absurd consequence rule of statutory interpretation in the face of plain statutory language. *Houghton Lake Area Tourism & Convention Bureau, supra* at 142-143. Defendant must direct any complaint regarding the scope of this plain language to the Legislature.

Because the plain language of § 145(2) applies to defendant's admitted conduct in attempting to solicit a perceived 14-year-old boy for the purpose of engaging in sexual contact, a valid factual basis supported defendant's guilty plea. Accordingly, the trial court did not abuse its discretion when it denied defendant's motion to withdraw his guilty plea.

Affirmed.