# Order

Michigan Supreme Court
Lansing, Michigan

July 3, 2019

157465

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellee,

v

KELVIN WILLIS,
      Defendant-Appellant.

SC: 157465
COA: 334398
Wayne CC: 15-010530-FH

_____/

On May 7, 2019, the Court heard oral argument on the application for leave to appeal the January 11, 2018 judgment of the Court of Appeals. On order of the Court, the application is again considered, and it is DENIED, because we are not persuaded that the questions presented should be reviewed by this Court.

However, we take this opportunity to bring the issues presented in this case to the attention of the Legislature. While, in our judgment, the Court of Appeals properly sustained defendant's conviction under MCL 750.145c(2), see *People v Willis*, 322 Mich App 579, 586 (2018), defendant has nonetheless raised pertinent concerns regarding the breadth of the statute that may warrant further review by the Legislature.

MCL 750.145c(2) proscribes child sexually abusive activity and child sexually abusive material:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, copies, reproduces, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, copy, reproduce, or finance any child sexually abusive activity or child sexually abusive material for personal, distributional, or other purposes if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child is guilty of a [felony.]

For purposes of this statute, a "child" is defined as "a person who is less than 18 years of age, subject to the affirmative defense created in [MCL 750.145c(7)] regarding

persons emancipated by operation of law." MCL 750.145c(1)(c). "Child sexually abusive activity," in turn, "means a child engaging in a listed sexual act." MCL 750.145c(1)(n). And "listed sexual act[s]" include "sexual intercourse, erotic fondling, sadomasochistic abuse, masturbation, passive sexual involvement, sexual excitement, [and] erotic nudity." MCL 750.145c(1)(i).

As the Court of Appeals has previously recognized, MCL 750.145c(2) "imposes criminal liability [upon] three distinct groups of 'person[s] . . . .' " *People v Adkins*, 272 Mich App 37, 40 (2006). The first clause imposes liability upon a person "who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material . . . ." MCL 750.145c(2). The second clause imposes liability upon any person who "arranges for, produces, makes, copies, reproduces, or finances . . . any child sexually abusive activity or child sexually abusive material . . . ." *Id*. The third clause imposes liability on a person "who attempts or prepares or conspires to arrange for, produce, make, copy, reproduce, or finance any child sexually abusive activity or child sexually abusive material . . . ." *Id*.

Only as it pertains to the first "group" must a person act "for the purpose of producing any child sexually abusive material" in order to violate MCL 750.145c(2). In contrast, as it pertains to the second and third groups, the person must act in an effort to facilitate "child sexually abusive activity *or* child sexually abusive material . . . ." *Id*. (emphasis added). The Legislature's use of the disjunctive "or" in the statute is determinative. *Mich Pub Serv Co v Cheboygan*, 324 Mich 309, 341 (1949) (" 'Or' is . . . used to indicate a disunion, a separation, an alternative."). "[O]r" thus indicates the Legislature's intention to criminalize not only efforts to produce child sexually abusive material, but also efforts to engage in child sexually abusive activity. See *id*. Had the Legislature intended to only proscribe activity that is undertaken with the purpose of creating child sexually abusive material, it would have said as much, as it did in setting forth the first group of violators under MCL 750.145c(2).

Accordingly, the Court of Appeals correctly upheld defendant's conviction under MCL 750.145c(2). *Willis*, 322 Mich App at 582. Defendant, a 52-year-old man at the time of the conduct relevant to this case, offered a 16-year-old boy, i.e., a "child" under MCL 750.145c, money in exchange for sexual activities. Thus, defendant "attempt[ed] . . . to arrange for . . . or finance . . . child sexually abusive activity . . . for personal . . . purposes . . . ." MCL 750.145c(2).

Defendant argues that this interpretation does not accurately reflect the genuine intentions of the Legislature. More specifically, he argues that the Legislature did not intend for the statute to criminalize such a broad range of conduct. Consider, for example, an 18-year-old and 17-year-old couple who discuss engaging in sexual intercourse after their high school prom. The 17-year-old is a "child" for purposes of

MCL 750.145c; sexual intercourse is a "listed sexual act" under MCL 750.145c(1)(i); and thus, it appears that, under the statute, the 18-year-old could be convicted of "a felony punishable by imprisonment for not more than 25 years," MCL 750.145c(2)(b), because he or she "arrange[d] for . . . child sexually abusive activity" with a person under 18 years old. We question whether this was a result the Legislature genuinely sought when it enacted MCL 750.145c(2), although the conduct indisputably falls within the purview of the language of this statute.

Indeed, defendant raises a reasonable argument that MCL 750.145c(2), as written, elevates the age of consent in Michigan from 16 years old to 18 years old, effectively nullifying several otherwise important and often-employed criminal statutes of our state. The relevant age of consent under the criminal sexual conduct statutes is 16 years old. See MCL 750.520b to MCL 750.520e. Specifically, "[a] person is guilty of criminal sexual conduct in the third degree if the person engages in sexual penetration with another person and if any of the following circumstances exist: (a) That other person is at least 13 years of age and under 16 years of age." MCL 750.520d(1). Revisiting the previous example, the 18-year-old would not have violated MCL 750.520d if he or she had not engaged in sexual intercourse with his or her 17-year-old partner. Nonetheless, the 18-year-old could still be convicted under MCL 750.145c(2) because he or she had "arrange[d] for . . . child sexually abusive activity . . . ." In effect, then, the age of consent is no longer 16 years old, but 18 years old, as any sexually listed act with an individual under 18 years old could result in criminal liability under MCL 750.145c(2). Similarly,

> [a] person who accosts, entices, or solicits a child less than 16 years of age, regardless of whether the person knows the individual is a child or knows the actual age of the child, or an individual whom he or she believes is a child less than 16 years of age with the intent to induce or force that child or individual to commit an immoral act, to submit to an act of sexual intercourse . . . is guilty of a felony punishable by imprisonment for not more than 4 years . . . . [MCL 750.145a.]

Again, the relevant age for purposes of the solicitation statute is 16 years old. Therefore, one who entices a 17-year-old to engage in sexual intercourse would not be criminally liable under MCL 750.145a. Under MCL 750.145c(2), however, one who "arranges for" that same 17-year-old to engage in sexual intercourse could be held criminally liable.

Accordingly, it is somewhat difficult to harmonize the expansiveness of MCL 750.145c(2) with the rest of Michigan's criminal sexual conduct scheme. As illustrated above, MCL 750.145c(2) appears to criminalize behavior that is otherwise permissible under the criminal sexual conduct statutes. This Court, however, is bound by statutory language—"[t]he Legislature is presumed to have intended the meaning it has plainly

expressed, and if the expressed language is clear, judicial construction is not permitted and the statute must be enforced as written." *Robertson v DaimlerChrysler Corp*, 465 Mich 732, 748 (2002). And MCL 750.145c(2) does not require that a person act with the purpose of producing child sexually abusive material in order to fall within the second or third groups subject to criminal liability. Accordingly, defendant's conviction must be upheld and a denial of defendant's application for leave to appeal is warranted. Nonetheless, defendant has highlighted concerns regarding the breadth of MCL 750.145c(2). The Legislature may, or may not, wish to assess these concerns and possibly clarify and harmonize our child sexual abuse statutory scheme.

VIVIANO, J. (*dissenting*).

This case raises two issues: (1) whether, to sustain a conviction under MCL 750.145c(2), the prosecution must always prove that the defendant acted for the purpose of producing child sexually abusive material, and (2) whether the evidence in this case was sufficient to support defendant's conviction under that provision. The Court of Appeals concluded that a defendant may violate MCL 750.145c(2) without acting for the purpose of producing sexually abusive materials and that defendant in this case violated the statute by "arrang[ing] for . . . or . . . attempt[ing] or prepar[ing] . . . to arrange for . . . child sexually abusive activity . . . ." MCL 750.145c(2). I agree with the majority that the Court of Appeals' interpretation raises the question of whether the Legislature intended MCL 750.145c(2) to raise the age of consent in Michigan from 16 to 18-years-old. Even under the Court of Appeals' broad interpretation of the statute, however, I disagree with the Court of Appeals' conclusion that the evidence in this case was sufficient to sustain defendant's conviction.[1] Therefore, because I would reverse the Court of Appeals, I respectfully dissent from the Court's order denying leave to appeal.

## I. FACTS AND PROCEDURAL HISTORY

Defendant encountered the victim in this case, a 16-year-old male, on August 12, 2015. The victim testified at trial that he was familiar with defendant because defendant lived in an apartment complex across the street from where the victim lived with his grandmother. According to the victim's testimony, he was outside talking to a neighbor when he saw defendant, who beckoned him over. Defendant engaged the victim in conversation, asking how he was doing and how old he was, and exchanged phone numbers with the victim. Defendant then asked if the victim wanted to come inside his apartment and hang out, and the victim agreed to do so.

---

[1] As a result, I do not opine on whether the Court of Appeals correctly interpreted MCL 750.145c(2).

After the victim went inside, defendant locked the door to the apartment and sat next to the victim on the couch. Then, defendant began to argue with another person in the apartment and left the room momentarily. When defendant returned, he stood next to the victim and showed him a video on his phone of "two men having sexual intercourse." Defendant told the victim, "[T]his is what I like to do," and proceeded to offer the victim $25 if he would allow defendant to engage in sexual acts with him. The victim refused and stood to leave, but defendant grabbed him by the shoulder and pulled him back onto the couch. Defendant then offered the victim $100 if he would "have sexual intercourse" with him. When the victim again refused, defendant left the room once again to talk to the other person in the apartment. At that point, the victim ran out the front door and found a neighbor, who called the police after hearing the victim recount what had occurred.

Defendant was charged with two counts of child sexually abusive activity, one count of distributing obscene material to a minor, and one count of possession of cocaine (which the police found when they arrested him). The district court refused to bind defendant over for trial on the child sexually abusive activity counts, concluding that the prosecution was required to show that defendant had acted with the intent to produce child sexually abusive material. The court explained:

> The Court, having had an opportunity to review the authority referenced by the People, is of the opinion that the charged violations in Counts 1 and 2 would, in fact, require some evidence—competent evidence—that there be a persuasion, inducement, enticement, coercion causing or knowingly allowing a child under the age of eighteen to engage in a sexually abusive activity for the purpose of producing child sexually abusive material . . . .

Following the bindover on the remaining counts,[2] the prosecution filed a motion to amend the information to reinstate the two child sexually abusive activity charges. The circuit court granted the motion, making the following findings:

---

[2] After the district court dismissed the two counts of child sexually abusive activity, the prosecution amended the information to add two counts of engaging or offering to engage the services of person under 18 for purposes of prostitution under MCL 750.449a(2). That provision states, "A person who engages or offers to engage the services of another person, who is less than 18 years of age and who is not his or her spouse, for the purpose of prostitution, lewdness, or assignation, by the payment in money or other forms of consideration, is guilty of a crime punishable as provided in section 451"—i.e., "by imprisonment for not more than 5 years or a fine of not more than $10,000.00, or both," MCL 750.451(4).

The Court finds that the examining magistrate clearly erred in its interpretation of the law, that the examining magistrate interpreted the law incorrectly and that the statute—although I think it's understandable and confusing particularly in light of the fact that the complaint and warrant was drafted with the same wording, that there's no requirement under the statute that material such as video, pictures or any other type of material has to be produced, that the sexually abusive activity is a broader act, has a broader definition, and in this particular case the Defendant's conduct, as testified to at the exam, of having the child go into the apartment for the purposes of offering him money, asking him if he would engage in certain sexual activity, that being sexual intercourse, which is defined as a sexually abusive activity and is a listed sexual act and masturbation, is listed as a— listed sexual act that the Defendant attempted, prepared or attempted to make—arrange to have someone, meaning the complainant, engage in the sexually abusive activity with him and that the person was under eighteen years of age.

At the conclusion of trial, the court instructed the jury regarding the crime as follows:

[T]he Defendant is charged with a second count of child sexually abusive activity. So in Count II the Defendant is charged with a crime known as child sexually abusive activity. The Defendant has plead [sic] not guilty to this charge. To prove this charge the prosecution must prove each of the following elements beyond a reasonable doubt and there are two elements for Count II.

First, that the Defendant attempted, prepared or attempted to make or arrange to have someone engage in sexually abusive activity with a person. Second, that this person was under eighteen years of age.

So on the next page I've defined—I have the definition of child sexually abusive activity that applies to Count I and Count II.

Sexually abusive activity is defined by law as a child engaging in any of the following sexual acts. A, sexual intercourse whether genital, anal or oral. B, fondling of a person's clothed or unclothed genitals, public [sic] area, buttocks or female breasts for the purpose of sexual gratification. C, masturbation.

Following deliberations, the jury acquitted defendant of one count of child sexually abusive activity, but convicted him on the remaining charged counts.

Defendant appealed, and the Court of Appeals affirmed. Relying on its prior decision in *People v Adkins*,[3] the Court of Appeals first rejected defendant's argument that MCL 750.145c(2) requires the prosecution to prove that a defendant acted with the intent to produce child sexually abusive material. The court explained:

> This Court has recognized that MCL 750.145c(2) applies to three distinct groups of persons. The first category includes a person "who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material . . . ." MCL 750.145c(2)[.] This category refers to those who are engaged in the production of pornography. It is undisputed that defendant does not fall within this group. The second category includes a person who "arranges for, produces, makes, copies, reproduces, or finances . . . any child sexually abusive activity or child sexually abusive material . . . ." MCL 750.145c(2)[.] The last category is defined to include a person "who attempts or prepares or conspires to arrange for, produce, make, copy, reproduce, or finance any child sexually abusive activity or child sexually abusive material . . . ." MCL 750.145c(2)[.] The use of the disjunctive "or" in the second and third categories clearly and unambiguously indicates that persons who arrange for or attempt or prepare to arrange for child sexually abusive activity face criminal liability. The Legislature thus omitted from the second and third groups subject to criminal liability any requirement that the individuals therein must have acted for the ultimate purpose of creating any child sexually abusive material, a specific requirement applicable to the first group of criminals. Accordingly, we reject defendant's argument that MCL 750.145c is limited to conduct involving the production of sexually abusive material. The allegations against defendant squarely place him within the group of persons on whom MCL 750.145c(2) imposes criminal liability.[4]

The Court of Appeals then concluded that, under its interpretation of the statute, the evidence was sufficient to convict defendant. The Court of Appeals explained that "defendant arranged for, or attempted to arrange or prepare for, child sexually abusive activity" when he "invited the 16-year-old victim into his apartment, showed the victim a pornographic video of two men engaging in sexual intercourse, offered the victim $25 to allow defendant to insert his fingers into the victim's anus while he masturbated, and later offered the victim $100 to engage in sexual intercourse."[5] In support of this

---

[3] *People v Adkins*, 272 Mich App 37 (2006).

[4] *People v Willis*, 322 Mich App 579, 585-586 (2018) (citations and quotation marks omitted).

[5] *Id.* at 586.

conclusion, the Court of Appeals compared this case to *People v Aspy*, in which the Court of Appeals found sufficient evidence that the defendant had "prepar[ed] . . . to arrange for" child sexually abusive activity in violation of MCL 750.145c(2) where he communicated online with an individual posing as an underage girl, made plans to see her in person, and drove to Michigan to meet her.[6] Thus, the Court of Appeals in this case affirmed defendant's convictions.[7]

## II. ANALYSIS

Regardless of whether we interpret MCL 750.145c(2) as always requiring that a defendant act with the purpose of creating sexually abusive materials, I believe that the evidence in this case is insufficient because defendant did not "arrange[] for" child sexually abusive activity. MCL 750.145c(2) provides, in relevant part:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, copies, reproduces, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, copy, reproduce, or finance any child sexually abusive activity or child sexually abusive material for personal, distributional, or other purposes if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child is guilty of a crime . . . .

The prosecutor argues that "[v]iewing the evidence in a light most favorable to the People, there is sufficient evidence that the Defendant arranged for, or attempted to arrange for, child sexually abusive activity."[8] Thus, in order to properly analyze whether the evidence was sufficient to convict defendant in this case, the focus must be on the

---

[6] *People v Aspy*, 292 Mich App 36, 42 (2011).

[7] The Court of Appeals also rejected defendant's claims that the trial judge pierced the veil of judicial impartiality and that his sentence was an unreasonable departure from the guidelines. Defendant has not raised the latter claim before our Court. Because I would reverse based on the insufficiency of the evidence, I do not address defendant's judicial partiality claim.

[8] Prosecutor's Supplemental Brief on Appeal, p 12.

proper interpretation of "arranges for" within the context of the statute.[9]  Looking to the dictionary, the word "arrange" has two potentially relevant definitions: "to make plans or preparations: *They arranged for a conference on Wednesday*" or "to make a settlement; come to an agreement: *to arrange with the coal company for regular deliveries*."[10]

To determine the appropriate definition, we "must use the context in which a given word appears to determine its aptest, most likely sense."[11]  Here, replacing the term in the statute with the two potential definitions, the statute either reads "[to make plans or preparations] for . . . child sexually abusive activity" or "[to come to an agreement] for . . . child sexually abusive activity."  I believe the more natural reading—i.e., the term's "aptest, most likely sense"—is the former option.[12]  That this is the more natural reading is especially pronounced when inserting the statute's definition of "child sexually abusive activity": "a child engaging in a listed sexual act."[13]  Then, the statute reads either "[to make plans or preparations] for . . . any child engaging in a listed sexual act" or "[to come to an agreement] for . . . any child engaging in a listed sexual act."  While making

---

[9] The Court of Appeals held that the evidence was sufficient to show that defendant "arranged for, or attempted to arrange or prepare for, child sexually abusive activity . . . ." *Willis*, 322 Mich App at 586.  This deviates slightly from the language of the statute.  Section 145c(2) does not include in its prohibited conduct "preparing for" child sexually abusive activity.  Instead, the statute prohibits penalizes "a person who attempts or prepares . . . to arrange for, produce, make, copy, reproduce, or finance any child sexually abusive activity . . . ."  Thus, the focus must be on whether defendant "arrange[d] for" or "attempt[ed] or prepare[d] . . . to arrange for" child sexually abusive activity.

[10] Dictionary.com, <https://www.dictionary.com/browse/arrange> (accessed June 17, 2019) [https://perma.cc/N757-FF6N].  The definitions provided above are the two possible definitions of "arrange" when it is used as an intransitive verb, meaning that it has no direct object.  See *id.*  "Arrange" as used in the statute is intransitive because it is followed not by a direct object, but instead by a prepositional phrase—"for . . . child sexually abusive activity . . . ."  *Merriam Webster's New Collegiate Dictionary* (1974) provides two similar definitions of "arrange" when used as an intransitive verb: "to bring about an agreement or understanding <*arranged* to have a table at the restaurant>" and "to make preparations: PLAN <*arranged* for a vacation with his family>."

[11] Scalia & Garner, *Reading Law: The Interpretation of Legal Texts* (St. Paul: Thomson/West, 2012), p 418.

[12] Notably, the examples following the "make preparations" definition of "arrange" in both the dictionaries cited above fit the sentence structure used in the statute—i.e., "arranged for a conference," "arranged for a vacation," and "arrange[d] for . . . child sexually abusive activity."

[13] See MCL 750.145c(1)(n) (" 'Child sexually abusive activity' means a child engaging in a listed sexual act.").

preparations for a child engaging in sexual acts has a clear meaning, it is not at all clear what it means to come to an agreement for a child engaging in a sexual act.

That the former definition is appropriate is also supported by the fact that the statute does not specify with whom a defendant must "come to an agreement" to be guilty of violating the statute. While plans or preparations require only unilateral action, an agreement requires the involvement of another party. But who is other party under the statute? A codefendant? The victim? Anyone, as long as there is an agreement somewhere? That the statute does not answer this question supports the conclusion that "come to an agreement" is not the aptest definition of "arrange" in the context of the statute. As a result, I believe that the most likely sense of "arrange," as used in the statute, is "to make plans or preparations."[14]

But there is no indication in the record that defendant "ma[de] plans or preparations" for child sexually abusive activity. Instead, the record reflects that defendant happened upon the victim outside his apartment and took advantage of the chance opportunity to lure the victim into his apartment. Indeed, the prosecutor acknowledged at oral argument that defendant only encountered the victim "by happenstance."[15] While defendant proceeded to take advantage of the "happenstance" encounter by inviting the victim into his house and seeking to solicit sexual acts, there is no indication that defendant did anything to plan or prepare for the child sexually abusive activity beforehand.

---

[14] While I believe this interpretation of "arrange" most closely adheres to the plain language of the statute, the rule of lenity would compel this reading even if the two definitions of "arrange" were equally apt. Under the rule of lenity, "penal statutes are to be strictly construed and any ambiguity is to be resolved in favor of lenity[.]" *People v Gilbert*, 414 Mich 191, 211 (1982); *id.* ("The scope of this statute is at least uncertain; it should be applied only to those acts which the Legislature clearly meant to proscribe."); *People v Dempster*, 396 Mich 700, 715 (1976) ("No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes.") (citation and quotation marks omitted); *People v Goulding*, 275 Mich 353, 359 (1936) ("Defendant ought not to be convicted unless he is clearly and unequivocally within the language of a statute which by its terms covers his case."). In this case, if the competing definitions of the statutory term are both reasonable under the statute, then the rule of lenity compels the application of the definition under which defendant is not criminally liable. See *Reading Law*, p 300 (criticizing a court decision for not applying the rule of lenity in a case involving competing interpretations of a statutory term).

[15] See Michigan Supreme Court, Oral Arguments in *People v Willis* <https://www.youtube.com/watch?v=I1V0Qdf_N34> at 19:22 to 19:26 (accessed May 30, 2019).

In concluding that defendant had "arrange[d] for" child sexually abusive activity, the Court of Appeals relied on its prior decision in *Aspy*.[16] In *Aspy*, the defendant engaged in sexual conversations online over a one-month period with a person posing as a 14-year-old girl.[17] The defendant, who lived in Indiana, eventually agreed to drive to Michigan to meet the purported 14-year-old and take her camping while her mother was out of town.[18] Before driving to meet her, the defendant reserved a campsite and purchased the girl's favorite alcoholic beverage, which he brought along.[19]

As in this case, the prosecutor in *Aspy* "charged [the] defendant with attempting, preparing, or conspiring to arrange for child sexually abusive activity."[20] The defendant argued that the acts establishing a violation of MCL 750.145c(2) occurred only in Indiana, and thus the Michigan courts lacked jurisdiction over the crime. The Court of Appeals disagreed, explaining:

> Defendant, however, fails to acknowledge he also prepared to commit child sexually abusive activity while in Michigan, not Indiana. . . . He drove into Michigan to a location where he intended to meet a child whom he believed to be under the age of 18. There is substantial evidence that he intended to take a girl under the age of 18 to a reserved campsite and engage in behavior wrongful under MCL 750.145c(2). Since preparation to arrange for child sexually abusive activity is an element of MCL 750.145c(2), we reject defendant's contention that Michigan lacked territorial jurisdiction for his prosecution under MCL 762.2.[21]

*Aspy* is distinguishable in two important ways. First, the Court of Appeals in that case focused on whether the relevant actions took place in Michigan or Indiana, rather than explaining why the defendant's actions constituted "arrang[ing] for" child sexually abusive activity. The Court of Appeals did summarily conclude that "the prosecution presented more than sufficient evidence to allow a rational jury to conclude that defendant prepared and attempted to commit child sexually abusive activity . . . ."[22] Notably, however, the language used by the Court of Appeals does not adhere to the statute, as the statute says nothing about preparing or attempting to "commit" child

---

[16] *Aspy*, 292 Mich App 36.

[17] *Id.* at 38-39.

[18] *Id.* at 39.

[19] *Id.* at 39-40.

[20] *Id.* at 42.

[21] *Id.* at 43-44.

[22] *Id.* at 42-43.

sexually abusive activity, but only preparing or attempting to "arrange for" child sexually abusive activity. Thus, the basis for the Court of Appeals' conclusion regarding the sufficiency of the evidence is unclear.

*Aspy* is also distinguishable on its facts. In *Aspy*, the defendant was in contact with the supposed 14-year-old for a month before planning a trip to visit her. He reserved a campsite, purchased a particular beverage, and traveled across state lines with the intent of meeting with the girl and engaging in sexual activity. In other words, the defendant "ma[de] plans or preparations" for child sexually abusive activity. In this case, by contrast, the record does not contain any evidence that defendant made any preparations beforehand for his encounter with the victim. Instead, defendant encountered the victim by chance and, in a continuous sequence of events, obtained his number, invited him to hang out, showed him pornography, and offered him money for sex.

The conclusion that defendant did not "arrange[] for" child sexually abusive activity within the meaning of the statute is supported by the fact, as noted above, that MCL 750.145c(2) does not proscribe the act of engaging in child sexually abusive activity.[23] The statute does not refer to a person who commits, engages in, or solicits child sexually abusive activity, but only "a person who arranges for, produces, makes, copies, reproduces, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, copy, reproduce, or finance any child sexually abusive activity." Given that the statute does not prohibit the act itself, or even an attempt to commit the act itself, "arranges for" must mean something more than an attempt to commit child sexually abusive activity. In this case, however, the most that can be said of defendant's conduct is that he attempted to engage in sexual activity with the victim, as the record does not reveal any preparation on defendant's part.

## III. CONCLUSION

For the reasons set forth above, regardless of whether MCL 750.145c(2) always requires that a defendant act with the purpose of producing sexually abusive materials, I believe the evidence presented in this case did not establish that defendant did anything to

---

[23] MCL 750.145c(1)(n) does define "[c]hild sexually abusive activity" as "a child engaging in a listed sexual act." But MCL 750.145c(2) does not proscribe the *defendant*'s act of engaging in child sexually abusive activity.

"arrange[] for" for child sexually abusive activity within the meaning of the statute.[24]  As a result, I would hold that the evidence was insufficient to convict defendant.[25]  I respectfully dissent.

MCCORMACK, C.J., joins the statement of VIVIANO, J.

---

[24] Although I do not believe defendant "arrange[d] for . . . child sexually abusive activity" within the meaning of MCL 750.145c(2), I do not mean to suggest that defendant's actions in this case were acceptable.  Indeed, defendant's conduct may violate another statute, such as MCL 750.449a, under which the prosecution charged defendant after the district court dismissed the charges of child sexually abusive activity.  See note 1 of this statement.

[25] In the denial order, the majority, quoting MCL 750.145c(2), concludes that defendant " 'attempt[ed] . . . to arrange for . . . *or finance* . . . child sexually abusive activity . . . for personal . . . purposes . . . .' "  (Emphasis added.)  The prosecution, however, has not argued that defendant attempted to "finance" child sexually abusive activity by offering money in exchange for sex.  Nor did the trial court include "finance" within the jury instruction.  Accordingly, I would decline to address whether defendant "attempt[ed] to . . . finance . . . child sexually abusive activity" within the meaning of the statute.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

July 3, 2019



Clerk

t0702