*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant/Cross-Appellee

v

JOSEPH PETER STURZA,

        Defendant-Appellee/Cross-Appellant.

UNPUBLISHED
June 25, 2019

No. 341366
Macomb Circuit Court
LC No. 2015-002442-FH

Before: SAWYER, P.J., and O'BRIEN and LETICA, JJ.

PER CURIAM.

A jury convicted defendant of child sexually abusive activity, MCL 750.145c(2), and using a computer to communicate with a person for the purpose of committing child sexually abusive activity, MCL 750.145d.[1] The trial court sentenced defendant to an 18-month downward departure sentence of five years' probation, with the first year to be served in the county jail. The prosecution appeals as of right the trial court's departure sentence, and defendant cross-appeals his convictions. We affirm defendant's convictions, but vacate defendant's sentence and remand for resentencing.

Defendant, a former admissions director at Austin Catholic High School, was convicted for his conduct involving a 15-year-old student at the school. The prosecution presented evidence that the victim transferred to Austin Catholic High School in January of his freshman year, after having difficulty with his grades and being bullied at his former school. During the victim's sophomore year, the victim's father, who sometimes volunteered at the school, noticed defendant "hovering" over the victim, paying closer attention to the victim than other students, and giving the victim hugs that lasted longer than an innocent hug. The victim's parents also

---

[1] The jury acquitted defendant of accosting a minor for immoral purposes, MCL 750.145a, and using a computer to communicate with a person for the purpose of committing that crime, MCL 750.145d(1)(a).

-1-

noticed that the victim seemed anxious, was not eating right, and was spending an excessive amount of time on his electronic devices. The victim's father later discovered a series of electronic communications between defendant and the victim, which he shared with school officials. The communications were sexual in nature and many discussed masturbation.

The victim testified that he got to know defendant during his sophomore year. On one occasion, while "venting" to defendant, the victim revealed that he thought he was gay. Defendant wanted to pursue the discussion, and the next day defendant revealed that he was also gay. Defendant then began spending more time with the victim, sometimes even pulling him out of class. Their conversations soon turned sexual in nature, and defendant often closed the door to his office, causing the victim to feel trapped. Defendant eventually began using his phone, computer, and iPad to contact and communicate with the victim outside of school. In many of the conversations, they discussed masturbation. Defendant talked about different ways to masturbate, would demonstrate techniques "in the air," and discussed the use of lubricants to masturbate. Defendant suggested that the victim perform the different techniques and provided the victim with lubricants to use to masturbate. The victim thought some of the techniques sounded disgusting, but he tried them to please defendant. Afterward, defendant would ask the victim to tell him about the victim's experiences with the different techniques.

The jury found defendant guilty of child sexually abusive activity and using a computer to communicate with a person for the purpose of committing child sexually abusive activity, but not guilty of accosting a minor for immoral purposes and using a computer to communicate with a person for the purpose of committing that crime. Defendant's sentencing guidelines' range for his child-sexually-abusive-activity conviction recommended a minimum sentence range of 30 to 50 months' imprisonment. The trial court departed from that range and sentenced defendant to five years' probation, with the first year to be served in the county jail.

The prosecution now appeals defendant's sentence, and defendant appeals his convictions. We will first address defendant's claims challenging his convictions.

I. CHILD SEXUALLY ABUSIVE ACTIVITY

Defendant challenges both the applicability of the child-sexually-abusive-activity statute to his alleged conduct and the factual sufficiency of the evidence in support of his child-sexually-abusive-activity conviction.

A. SCOPE OF MCL 750.145c(2)

Defendant argues that his conviction of child sexually abusive activity, MCL 750.145c(2), must be vacated because his alleged conduct does not fall within the scope of the statute. We disagree. "Whether conduct falls within the statutory scope of a criminal statute is a question of law that is reviewed de novo on appeal." *People v Adkins*, 272 Mich App 37, 39; 724 NW2d 710 (2006) (quotation marks and citation omitted).

"The main goal of statutory interpretation is to ascertain and give effect to the Legislature's intent." *People v Perry*, 317 Mich App 589, 604; 895 NW2d 216 (2016). "The most reliable indicator of the Legislature's intent is the words in the statute." *People v Peltola*, 489 Mich 174, 181; 803 NW2d 140 (2011). The words are interpreted in light of their ordinary

meaning and their context within the statute, and are read harmoniously to give effect to the statute as a whole. *Perry*, 317 Mich App at 604. "If the language is clear and unambiguous, the plain meaning of the statute reflects the legislative intent and judicial construction is not permitted." *People v Giovannini*, 271 Mich App 409, 412-413; 722 NW2d 237 (2006).

At the time of the charged offenses, MCL 750.145c(2) provided:

> A person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material, or a person who arranges for, produces, makes, copies, reproduces, or finances, or a person who attempts or prepares or conspires to arrange for, produce, make, copy, reproduce, or finance any child sexually abusive activity or child sexually abusive material for personal, distributional, or other purposes is guilty of a felony, punishable by imprisonment for not more than 20 years, or a fine of not more than $100,000.00, or both, if that person knows, has reason to know, or should reasonably be expected to know that the child is a child or that the child sexually abusive material includes a child or that the depiction constituting the child sexually abusive material appears to include a child, or that person has not taken reasonable precautions to determine the age of the child.

Child sexually abusive activity is defined to include masturbation. See MCL 750.145c(l)(n) (defining "child sexually abusive activity" as a child engaging in a "listed sexual act"); MCL 750.145c(l)(i) (defining a "listed sexual act" as including "masturbation"); MCL 750.145c(k) (defining "masturbation").

In *Adkins*, 272 Mich App at 39-40, this Court held that there are three categories of individuals who can be criminally liable under MCL 750.145c(2). The first category includes " '[a] person who persuades, induces, entices, coerces, causes, or knowingly allows a child to engage in a child sexually abusive activity for the purpose of producing any child sexually abusive material . . . .' " *Adkins*, 272 Mich App at 40-41, quoting MCL 750.145c(2). The second category involves a person who " 'arranges for, produces, makes, copies, reproduces, or finances . . . any child sexually abusive activity or child sexually abusive material.' " *Adkins*, 272 Mich App at 41, quoting MCL 750.145c(2). The third category involves a person who " 'attempts or prepares or conspires to arrange for, produce, make, copy, reproduce, or finance any child sexually abusive activity or child sexually abusive material . . . .' " *Adkins*, 272 Mich App at 41. The second and third categories are related, but the third group "broadens the proscribed second group to include persons who attempt, conspire, or even prepare to engage in actions prohibited within group two." *Id.* at 42. According to *Adkins*, the "or" between "child sexually abusing material" and "child sexually abusive activity" permits prosecution of

individuals who participate in child sexually abusive activity regardless of whether the ultimate purpose is to produce child sexually abusive material. *Id*. at 41-42.[2]

Defendant argues that his conduct does not fall within the definition of child sexually abusive activity because the victim's self-masturbation is not itself criminal. Defendant does not provide any support for this argument. More significantly, the definition of "child sexually abusive activity" does not contain any such limitation. The statute is not concerned with whether a child's underlying conduct is legal or illegal. Rather, the focus of the statute is on the offender's role. Because masturbation is expressly included in the definition of child sexually abusive activity, defendant could be found guilty of child sexually abusive activity if he attempted or prepared to arrange for the victim, a minor, to engage in masturbation for personal or other purposes—which is the conduct that defendant was accused of.

Further, given defendant's use of electronic devices for some of the activities, defendant's alleged conduct also falls within the scope of conduct prohibited by MCL 750.145d(1). That statute provides:

> A person shall not use the internet or a computer, computer program, computer network, or computer system to communicate with any person for the purpose of doing any of the following:
>
> (a) Committing, attempting to commit, conspiring to commit, or soliciting another person to commit conduct proscribed under section . . . 145c . . . in which the victim or intended victim is a minor or is believed by that person to be a minor. [MCL 750.145d(1).]

For these reasons, we conclude that defendant's conduct fell within the scope of MCL 750.145c(2) and MCL 750.145d, and his claim of error does not warrant relief.

## B. SUFFICIENCY OF THE EVIDENCE

Defendant relatedly argues that the evidence at trial was factually insufficient to support his convictions and that the trial court erred when it denied his motion for a directed verdict. We disagree. This Court reviews de novo both claims of error. *People v Wolfe*, 440 Mich 508, 515; 489 NW2d 748 (1992), amended 441 Mich 1201 (1992); *People v Mayhew*, 236 Mich App 112, 124; 600 NW2d 370 (1999).

---

[2] After *Adkins* was decided, the Legislature amended MCL 750.145c(2). See 2012 PA 583. The amendments, however, did not change the language on which the *Adkins* Court relied to conclude that child sexually abusive activity need not result in the production of child sexually abusive material. Under *Adkins* and the amended 2012 version of the statute in effect at the time of defendant's alleged conduct, a person was prohibited from "attempt[ing] or prepar[ing] . . . to arrange for . . . any child sexually abusive activity . . . for personal . . . or other purposes."

In deciding whether sufficient evidence has been presented to sustain a conviction and whether the trial court properly denied a motion for a directed verdict, a reviewing court must view the evidence in a light most favorable to the prosecution and determine whether any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt. *Wolfe*, 440 Mich at 515; *Mayhew*, 236 Mich App at 124.

Although defendant attempts to minimize the seriousness of his conduct in comparison to other cases where offenders were found guilty of child sexually abusive activity—see *People v Aspy*, 292 Mich App 36, 39-40, 43-44, 808 NW2d 569 (2011); *Adkins*, 272 Mich App at 44, 49; *People v Thousand*, 241 Mich App 102, 104-105, 113-117; 614 NW2d 674 (2000), rev'd in part on other grounds 465 Mich 149 (2001)—in reviewing a challenge to the sufficiency of evidence, this Court does not examine the relative seriousness of different conduct. We only determine whether there was sufficient evidence to prove all the elements of an offense. As explained, MCL 750.145c(2) prohibits conduct that includes "attempt[ing] or prepar[ing] . . . to arrange for . . . any child sexually abusive activity . . . for personal . . . or other purposes," *Adkins*, 272 Mich App at 41-42, and child sexually abusive activity includes masturbation. MCL 750.145c(1)(i), (k), and (n). The statute does not require that a defendant attempt to engage in sexual activity with a child. Nor does it require that the child sexually abusive activity occur in the defendant's physical presence. Defendant's apparent arguments to the contrary are unpersuasive.

Defendant also attempts to draw a distinction between "encourage," which applies to the first category of conduct prohibited by MCL 750.145c(2), and "arrange," which is used to describe the third category of prohibited conduct.[3] The prosecution relied on the third category—not the first—as the basis for its theory of defendant's guilt. *Merriam-Webster's College Dictionary* (11th ed) defines "arrange" in relevant part as "to make preparations for: PLAN." *Id*. at p 68. It defines "encourage" in relevant part as "to attempt to persuade" or to "spur on." *Id*. at p 410.

According to the victim, defendant not only talked about masturbation in general, but would discuss techniques and demonstrate different techniques "in the air." Defendant also brought lubricants to school and gave them to the victim, intending for the victim to use them to masturbate. The victim stated that he thought the techniques sounded disgusting, but he tried them to please defendant. This evidence was sufficient to enable the jury to find that defendant went beyond encouraging the victim to masturbate. Given defendant's actions of affirmatively describing and demonstrating specific techniques, and providing lubricants for the victim to use

---

[3] Defendant also contends that the trial court erred in denying his motion for a directed verdict because it wrongly determined there was sufficient evidence that defendant conspired with AR to arrange for child sexually abusive activity. Because the jury was not instructed on the conspiracy component of the statute and the trial court separately determined that there was sufficient evidence that defendant attempted to arrange for child sexually abusive activity, any error would be harmless.

in performing the different techniques, the jury could reasonably find that defendant was preparing and planning to have the victim perform the different masturbation techniques.

Under the prosecutor's theory of guilt, the statute also required the prosecutor to prove that defendant's actions in attempting or preparing to arrange for child sexually abusive activity be done for "personal . . . or other purposes." The prosecution presented evidence that after providing the victim instruction on different masturbation techniques, defendant had the victim report back how it felt and asked a number of questions such as how many fingers the victim had used. On at least one occasion, defendant had the victim masturbate at the same time as defendant, although they were at separate locations. According to the prosecution's expert witness, such conduct involves "the twisting of the relationship" intended for the adult's enjoyment. From this evidence, the jury could find beyond a reasonable doubt that defendant's conduct was intended for personal purposes, i.e., his own personal gratification.

Accordingly, the evidence was sufficient to support defendant's conviction of child sexually abusive activity. Given defendant's use of electronic devices for some of the activities, the evidence was also sufficient to support his conviction for violating MCL 750.145d.

## II. JURY INSTRUCTIONS

Defendant argues that he is entitled to a new trial because the trial court's jury instructions regarding the elements of child sexually abusive activity were confusing. After giving the instructions, the trial court asked, "Are both parties satisfied with the instructions as read?" To which defense counsel responded, "Yes, your Honor." In *People v Traver*, 502 Mich 23, 41; 917 NW2d 260 (2018), our Supreme Court held that the defendant waived any objection to the jury instructions because defense counsel responded, "Yes, your honor," after the trial court asked, "All parties are satisfied with the instructions as given?" Like in *Traver*, because defense counsel expressly announced his satisfaction with the jury instructions at trial, his claim of error related to the jury instructions has been waived. *People v Kowalski*, 489 Mich 488, 503-504; 800 NW2d 200 (2011). "One who waives his rights under a rule may not then seek appellate review of a claimed deprivation of those rights, for his waiver has extinguished any error." *Id.* at 503 (quotation marks and citation omitted). Accordingly, defendant is not entitled to relief with respect to this issue.[4]

---

[4] Defendant contends that, in *Kowalski*, 489 Mich at 505-510, our Supreme Court held that waiving a challenge to a trial court's jury instruction "does not preclude plain error analysis." Defendant is mistaken. The *Kowalski* Court prefaced the portion of the opinion that defendant cites to with the following:

> Defendant, however, argues that defense counsel merely forfeited the error because counsel did not state that he "approved" of the instructions. The distinction defendant attempts to make between counsel stating, "I approve of the instructions," and counsel stating, "I have no objections," is unavailing. Counsel's statements were express and unequivocal indications that he approved of the instructions. To hold otherwise would allow counsel to "harbor error at

# III. DOUBLE JEOPARDY

Defendant lastly argues that his dual convictions for child sexually abusive activity and using a computer to communicate with another for the purpose of committing child sexually abusive activity violate the double jeopardy protection against multiple punishments for the same offense. We disagree.

The United States and Michigan Constitutions guarantee that a person will not be twice placed in jeopardy for the same offense. US Const, Am V; Const 1963, art 1, § 15; *People v Nutt*, 469 Mich 565, 574; 677 NW2d 1 (2004). The state and federal guarantees are substantially identical and should be similarly construed. *People v Smith*, 478 Mich 292, 315-316; 733 NW2d 351 (2007); *People v Davis*, 472 Mich 156, 161; 695 NW2d 45 (2005). To determine if two convictions violate the double jeopardy protection against multiple punishments for the same offense, the determination of "same offense" requires a court to "first look to determine whether the Legislature expressed a clear intention that multiple punishments be imposed." *Smith*, 478 Mich at 316, citing *Missouri v Hunter*, 459 US 359, 368, 103 S Ct 673; 74 L Ed 2d 535 (1983). "Where the Legislature does clearly intend to impose such multiple punishments, imposition of such sentences does not violate the Constitution, regardless of whether the offenses share the 'same elements.' " *Smith*, 478 Mich at 316 (quotation marks and citation omitted). If the Legislature has not "clearly expressed its intention to authorize multiple punishments," the court should apply the "same elements" test prescribed in *Blockburger v United States*, 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932), "to determine whether multiple punishments are permitted." *Smith*, 478 Mich at 316.

The statute proscribing use of a computer to communicate with another for the purpose of committing certain prescribed crimes expressly provides:

> This section does not prohibit a person from being charged with, convicted of, or punished for any other violation of law committed by that person while violating or attempting to violate this section, including the underlying offense. [MCL 750.145d(4).]

---

trial and then use that error as an appellate parachute . . . ." Nevertheless, even if we were to accept defendant's argument that defense counsel did not waive the issue and, instead, merely forfeited it, defendant would not be entitled to reversal and a new trial. [*Id*. at 504-505 (footnotes omitted).]

Thus, the *Kowalski* Court clearly did not hold that a waived challenge to a trial court's jury instructions is subject to plain-error analysis. It instead entertained the defendant's jury-instruction error because the defendant argued that the issue was forfeited, not waived.

Defendant here does not argue that he forfeited, rather than waived, his challenge to the trial court's jury instructions. And even if defendant did so argue, our Supreme Court in *Traver*, 500 Mich at 41, made clear that responding "Yes, your honor," after the trial court asks if the defendant is satisfied with the jury instructions constitutes a waiver—not a forfeiture—of an appellate challenge to the jury instructions.

The statute expressly includes child sexually abusive activity as an underlying offense that a person is prohibited from committing with the use of a computer. MCL 750.145d(1)(a).

Although defendant argues that his two convictions do not satisfy the *Blockburger* "same elements" test and claims that the Legislature lacks the authority to violate the Double Jeopardy Clause, "[j]udicial examination of the scope of double jeopardy protection against imposed multiple punishments for the 'same offense' is [itself] confined to a determination of legislative intent." *People v Sturgis*, 427 Mich 392, 400; 397 NW2d 783 (1986). See also *Smith*, 478 Mich 315-316. Because the Legislature has clearly expressed its intent to authorize multiple punishments for defendant's two crimes, his multiple convictions do not violate double jeopardy protections and defendant's reliance on the *Blockburger* "same elements" test is misplaced.

## IV. THE PROSECUTION'S APPEAL

The prosecution argues that the trial court abused its discretion by departing from the sentencing guidelines' recommended-minimum sentence range of 30 to 50 months, and instead sentencing defendant to five years' probation with the first year to be served in jail. We agree.

We review the reasonableness of a trial court's departure sentence for an abuse of discretion. *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). The proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the "principle of proportionality" set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990). *Steanhouse*, 500 Mich at 459-460. To avoid violating the principle of proportionality, the trial court must impose a sentence that is " 'proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *Id*. at 474, quoting *Milbourn*, 435 Mich at 636.

Although the sentencing guidelines are now advisory, a sentencing court nevertheless must consult the guidelines when imposing a sentence. *People v Lockridge*, 498 Mich 358, 391; 870 NW2d 502 (2015). But " 'the key test is whether the sentence is proportionate to the seriousness of the matter, not whether it departs from or adheres to the guidelines' recommended range.' " *Steanhouse*, 500 Mich at 475, quoting *Milbourn*, 435 Mich at 661. However, a judge who departs from the guidelines range is required to " 'justify the sentence imposed in order to facilitate appellate review.' " *Steanhouse*, 500 Mich at 470, quoting *Lockridge*, 498 Mich at 392. See also *People v Dixon-Bey*, 321 Mich App 490, 525; 909 NW2d 458 (2017). The court must " 'include[] an explanation of why the sentence imposed is more proportionate to the offense and the offender than a different sentence would have been.' " *Dixon-Bey*, 321 Mich App at 525, quoting *People v Smith*, 482 Mich 292, 311; 754 NW2d 284 (2008). As stated in *Dixon-Bey*, 321 Mich App at 525:

> [R]elevant factors for determining whether a departure sentence is more proportionate than a sentence within the guidelines range continue to include (1) whether the guidelines accurately reflect the seriousness of the crime; (2) factors not considered by the guidelines; and (3) factors considered by the guidelines but given inadequate weight. [Citations omitted.]

-8-

In this case, the trial court did consult the sentencing guidelines. The court also reviewed a sentencing memorandum prepared by defense counsel, as well as many letters submitted in support of defendant. The court recognized that it was required to fashion a sentence "tailored to fit the particular circumstances of the case as well as the defendant." The court discussed the particular circumstances of the offense and defendant's lack of a prior criminal record. The court also discussed a report from a therapist who opined that defendant was not a predator and did not pose a threat to the community. It discounted the therapist's assessment, however, with its own observations that defendant's interactions with the victim—a vulnerable student—were "nothing short of grooming." While the court found that defendant's grooming behavior "was described in convincing fashion," it noted that the jury apparently did not believe that defendant intended to escalate the relationship to a physical one because it acquitted defendant of accosting a minor for an immoral purpose. The court therefore declined to rely on defendant's alleged grooming conduct. The trial court then stated:

> So, that leaves us with the crime of which you are actually convicted - convicted, that being the child sexually abusive activity and - and using the internet to commit that crime, and specifically, the jury found that you encouraged the victim to masturbate, albeit maybe not how - taught the victim how to masturbate, but different techniques of that sort. In Michigan encouraging a 15-year-old to masturbate is a 20-year offense. If you are convicted of that charge alone, your guidelines would be 12 to 20 months, but with the charge of using a computer to commit a crime, the guidelines are increased to 30 to 50 months.[5] And so, to recap, if you're - if you persuaded the victim to masturbate alone in your office or in person, the low end of the guidelines would be 20 months less than if you encouraged him to do so over email. The Court believes that that increase of - of the exact same behavior, just by using electronic means is manifestly unjust and disproportionate to the conduct. The punishment should be the same, whether the - whether perpetrated in person or over the internet.

> Again, sir, you – your counsel has – has characterized this as an inappropriate relationship. You've characterized this as an inappropriate relationship. I believe – I agree with the jury verdict and [the prosecutor] that this was criminal. There's no question about it. And to suggest that you were just out there trying to help a young man, belies your conduct of covering up your tracks, having [the victim] delete his emails, it doesn't add up to what you're – the narrative that you're proposing to this Court. So punishment is required.

> But, having said that the guidelines are disproportionate, it's the sentence of the Court that you're to serve the first year in the Macomb County Jail. You're to serve – you're to be on five years' probation.

---

[5] The trial court noted that without the 10-point score for prior record variable (PRV) 7, which requires a score of 10 points for one subsequent or concurrent felony conviction, MCL 777.57(1), defendant's guidelines range would be 12 to 20 months.

Preliminarily, we disagree with the prosecution's argument that the trial court's remarks concerning defendant's conviction of unlawful use of a computer effectively "writes [MCL 750.145d(1)] out of existence, thereby violating our Constitution's separate of powers doctrine, Const 1963, art 3, § 2." The trial court did not refuse to recognize the validity of defendant's conviction of using a computer to commit a crime in disregard of the Legislature's decision to criminalize that conduct. It only determined that defendant's use of a computer did not enhance the seriousness of defendant's conduct for purposes of determining an appropriate sentence because, in the trial court's view, such conduct is the same whether it is committed in person or over the Internet.

Yet, contrary to the trial court's belief, defendant's use of a computer significantly expanded the scope of his criminal activity and the seriousness of the crime. It enabled defendant to carry on his criminal activity by continuing to contact and communicate with the victim even when the victim was not in defendant's physical presence or even at school. At trial, the prosecutor presented voluminous evidence of defendant's contacts and communications with the victim by text messaging, e-mail, and other forms of electronic communication. There was also evidence that numerous other electronic communications were deleted. Given this evidence, the trial court abused its discretion by reasoning that defendant's use of a computer did not add to the seriousness of the circumstances surrounding defendant's conduct, and, by extension, reasoning that the guidelines' consideration of defendant's conviction of unlawful use of a computer had the effect of rendering his guidelines range disproportionate.[6]

Even though the trial court recited facts concerning the particularities of defendant as the offender, the court essentially ignored them when fashioning its sentence. Defendant maintains that the trial court did appropriately consider the seriousness of the offense when deciding to depart downward from the guidelines range. Defendant's arguments are not persuasive. The trial court did not consider the seriousness of what defendant actually did—speaking with and texting the victim to urge him to perform various masturbation techniques and then having the victim discuss his experiences with defendant for defendant's own prurient interests, or providing the victim with lubricants, again, so the child could share his experiences with defendant—as factors that mitigated the seriousness of defendant's conduct to support a downward departure. Instead, the court made a blanket sentencing decision that all offenders who commit this type of conduct using both in-person and Internet communications should be punished as if all of the conversations or other acts had occurred in person. This is not a particularized sentencing decision based on the seriousness of the actual circumstances

---

[6] The trial court also expressed its agreement with a view of the evidence that defendant was grooming the victim for a physical relationship, but then discounted that evidence because the jury acquitted defendant of accosting a minor for immoral purposes. Even if it was appropriate for the court to not consider or give weight to the evidence of defendant's grooming activity for this reason, that activity did not contribute to defendant's guidelines range of 30 to 50 months. Accordingly, there is no basis for concluding that defendant's guidelines range should be considered disproportionate because of defendant's acquittal on the charge of accosting a minor for immoral purposes.

"surrounding *the* offense and *the* offender." *Steanhouse*, 500 Mich at 474 (emphasis added). It ignores the scope of defendant's criminal activity, which was significantly aided and augmented by defendant's use of the Internet to repeatedly contact and communicate with the victim. Therefore, we vacate defendant's sentence and remand for resentencing.

We affirm defendant's convictions, but vacate defendant's sentence and remand for resentencing. We do not retain jurisdiction.


/s/ David H. Sawyer
/s/ Colleen A. O'Brien
/s/ Anica Letica