*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

GERALD LYNN ALLEN,

        Defendant-Appellant.

FOR PUBLICATION
March 17, 2020
9:00 a.m.

No. 342999
Saginaw Circuit Court
LC No. 17-043735-FC

Before: LETICA, P.J., and GADOLA and CAMERON, JJ.

CAMERON, J.

Defendant Gerald Lynn Allen was convicted by jury of felonious assault, MCL 750.82(1), and assault with intent to commit great bodily harm less than murder, MCL 750.84(1)(a), for assaulting his wife. Allen was sentenced as a third-offense habitual offender, MCL 769.11, to serve 8 to 20 years' imprisonment for assault with intent to commit great bodily harm less than murder and 3 to 8 years' imprisonment for felonious assault. Allen appeals his convictions and sentences. We affirm Allen's convictions but remand to the trial court for proceedings consistent with this opinion.

## I. FACTS

Allen assaulted his wife while they were alone in their home in Saginaw, Michigan, on the evening of April 21, 2017. After the assault, Allen drove the victim to a hospital in a different county[1] because he wanted to conceal the victim's injuries from her family. At the hospital, the victim received medical treatment for her injuries. The police were not contacted, and the victim left the hospital with Allen the next day.

---

[1] Allen took the victim from Saginaw County to McLaren Hospital in Flint, Michigan.

-1-

After leaving the hospital, Allen took the victim to a hotel, where they stayed for two days without eating or leaving the room. The victim did not have her cell phone during this time because Allen had taken it away. After leaving the hotel, Allen told the victim that they were traveling to Wisconsin but that he had to first stop at the courthouse in Saginaw. When Allen went inside the courthouse, the victim retrieved her cell phone from the trunk of the vehicle, took the car, and drove away. The victim called her brother for help, and her brother later found Allen at a bus station. Law enforcement was contacted, and Allen was arrested and charged for assaulting the victim.[2]

After Allen's arrest, police searched his home. Police observed blood in different rooms of the home and found a machete between a bedframe and the wall in a bedroom. Officer DeShawn Harris noted that the machete did not have any blood on it which suggested to him that it had not been used to cause the victim's injuries.

At trial the victim testified that, on the evening of the assault, Allen "came up" to her with a machete while she was in bed. The victim testified that the machete "nicked" her shoulder and that she grabbed the machete by the blade to protect herself which cut her hand, causing it to bleed. The victim further testified that Allen threw a computer at her, strangled her, threw her down the stairs, poked her under the left breast with a kitchen knife, pulled her hair, and kicked her in the face and in the mouth. The victim testified that, at one point, Allen threatened to kill her. The jury convicted Allen of assault with intent to commit great bodily harm less than murder and felonious assault in connection with the machete. The trial court sentenced Allen to terms of imprisonment and this appeal followed.

## II. *GINTHER* HEARING

This Court granted Allen's motion to remand so that he could bring a motion for a new trial and have a *Ginther*[3] hearing concerning his claims of ineffective assistance of counsel.[4] Allen argued to the trial court that trial counsel was ineffective for (1) failing to call as witnesses the two physicians who treated the victim at McLaren Hospital, (2) failing to request a missing witness instruction, (3) failing to seek production of the victim's mental health records, (4) failing to object to testimony from Officer Harris and Detective Patrick Busch that bolstered the victim's credibility, and (5) failing to request a lesser included offense instruction.

---

[2] Allen was initially charged with one count of assault with intent to murder, MCL 750.83, two counts of felonious assault, and one count of assault with intent to commit great bodily harm less than murder. The count of assault with intent to murder and one count of felonious assault were dismissed before trial.

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

[4] *People v Allen*, unpublished order of the Court of Appeals, entered June 24, 2019 (Docket No. 342999).

At the *Ginther* hearing, Dr. Craig Hicks, an emergency medicine physician at McLaren Hospital, testified that he had treated the victim for her injuries related to the assault. Dr. Hicks explained that he had observed that the victim had been injured and was in pain. Dr. Hicks noted that the victim had what appeared to be defensive wounds on her hand that were consistent with a weapon like a kitchen knife, not a machete. Dr. Hicks agreed that the hospital records did not reflect that the victim had suffered a cut to her shoulder and that he had ordered a CT scan of the victim's chest and neck. Dr. Hicks testified that the victim had suffered "multiple blows" to her face and head, which could have been done by a fist, hand, or "implement." During treatment, the victim told Dr. Hicks that she had been assaulted, but she did not identify Allen as the person who assaulted her.

Dr. Stephen Defriez, a radiologist at McLaren Hospital, testified that the victim's CAT scan did not show evidence that the victim had been strangled. He testified that, in order for the CAT scan to detect such an injury, the victim would have had needed to be strangled with sufficient force to break the capillaries in her neck. Dr. Defriez also testified that the CT scan of the victim's chest did not show evidence of penetrating trauma. However, a different CT scan showed that the victim had soft tissue swelling on her scalp and forehead region, which Dr. Defriez opined was caused by blunt trauma. The x-ray of the victim's hand did not reveal any additional injuries.

Allen's trial counsel testified at the *Ginther* hearing. He explained that he did not call Dr. Hicks or Dr. Defriez during trial because he wanted to distract the jury's attention from the fact that Allen drove the victim to another county for medical treatment, which counsel believed would demonstrate Allen's consciousness of guilt.[5] Trial counsel believed that Dr. Hicks's and Dr. Defriez's testimony was not necessary because he could still highlight the fact that the police were not called to the hospital while downplaying the fact that Allen took the victim to Flint to seek medical treatment. Because trial counsel decided it would not be beneficial to call Dr. Hicks and Dr. Defriez, a missing witness instruction was not requested. Trial counsel also explained that he did not request a lesser included offense instruction because Allen denied injuring his wife; instead, the main issue at trial was the identity of the attacker. Further, trial counsel did not recall Allen requesting that he obtain the victim's mental health records and opined that he did not object to certain portions of Officer Harris's and Detective Busch's testimony because they were not harmful to the case and because he did not want the jurors to believe that he was trying to hide information from them.

The trial court denied Allen's motion for a new trial. The trial court concluded that trial counsel's decision not to call Dr. Hicks or Dr. Defriez as witnesses constituted reasonable trial strategy. The trial court also rejected Allen's claims that trial counsel was ineffective for failing to request a missing witness jury instruction or a lesser included offense instruction, for failing to file a *Stanaway*[6] motion, and for failing to object to testimony that allegedly bolstered the victim's credibility.

---

[5] Trial counsel testified that he made this decision during trial after the prosecutor agreed to produce Dr. Hicks and Dr. Defriez.

[6] *People v Stanaway*, 446 Mich 643; 521 NW2d 557 (1994).

III.  ANALYSIS

A.  OFFENSE VARIABLE 8

Allen argues that he is entitled to resentencing because the trial court erred in assessing 15 points for Offense Variable (OV) 8.

This Court reviews for clear error the trial court's factual determinations at sentencing and "review[s] de novo whether the factual determinations were sufficient to assess points under OV [8]." *People v Schrauben*, 314 Mich App 181, 196; 886 NW2d 173 (2016).  "A sentencing court may consider all record evidence before it when calculating the guidelines, including, but not limited to, the contents of a presentence investigation report, admissions made by a defendant during a plea proceeding, or testimony taken at a preliminary examination or trial." *People v Ratkov (After Remand)*, 201 Mich App 123, 125; 505 NW2d 886 (1993).

When concurrent sentences are imposed, a trial court is required to calculate a guidelines minimum sentence range for the offense assigned the highest crime class, MCL 771.14(e)(*ii*).  In this case, the trial court imposed concurrent sentences, and assault with intent to commit great bodily harm less than murder is the offense with the highest crime class.  MCL 777.16d.  Therefore, that is the relevant offense to examine for purposes of resolving this scoring issue.  *People v Lopez*, 305 Mich App 686, 690; 854 NW2d 205 (2014) ("[T]he trial court was not required to independently score the guidelines for and sentence the defendant on each of his concurrent convictions if the court properly scored and sentenced the defendant on the conviction with the highest crime classification.").

A trial court is required to assess 15 points for OV 8 when "[a] victim was asported to another place of greater danger or to a situation of greater danger or was held captive beyond the time necessary to commit the offense."  MCL 777.38(1)(a); see also *People v Barrera*, 500 Mich 14, 16-17; 892 NW2d 789 (2017).  Thus, in order for 15 points to be assessed for OV 8, a victim must either be (1) "asported to another place of greater danger or to a situation of greater danger" or (2) "held captive beyond the time necessary to commit the offense."[7]  MCL 777.38(1)(a).

1.  ASPORTATION TO ANOTHER PLACE OR SITUATION OF GREATER DANGER

The trial court assessed points for OV 8 based exclusively on Allen's post-offense conduct.  Specifically, at sentencing the trial court concluded that Allen's act of driving the victim from their home to the hospital, and later to the hotel, constituted asportation.[8]  However, the undisputed

---

[7] Statutes are interpreted according to their plain language.  *People v Mattoon*, 271 Mich App 275, 278; 721 NW2d 269 (2006).  Generally, "or" is a disjunctive term, *People v Gatski*, 260 Mich App 360, 366; 677 NW2d 357 (2004), which indicates a choice between alternatives, *People v Kowalski*, 489 Mich 488, 499; 803 NW2d 200 (2011).

[8] At sentencing the prosecution urged the trial court to score OV 8 for Allen's movement of the victim to another county "even though he did take her to a hospital."  The trial court responded: "[a]nd *in addition to that* . . . [s]he was transported to a [h]otel . . . ."  This exchange suggests that

-4-

evidence is that defendant's movement of the victim occurred after the sentencing offense of assault with the intent to do great bodily harm less than murder was completed. Therefore, the Michigan Supreme Court's holding in *People v McGraw*, 484 Mich 120, 124; 771 Mich 120 (2009), requires us to conclude that the trial court erred by considering Allen's post-offense conduct as the basis for assessing points under OV 8, at least in connection with the issue of asportation.

In *McGraw*, our Supreme Court considered whether OVs are to be scored using an offense-specific approach or a transactional approach. *McGraw*, 484 Mich at 124. The *McGraw* Court concluded that, "[o]ffense variables are properly scored by reference only to the sentencing offense except when the language of a particular offense variable statute specifically provides otherwise." *Id*. at 135. As already stated, MCL 777.38(1)(a) provides, in relevant part, that OV 8 must be scored at 15 points if the "victim was asported to another place of greater danger or to a situation of greater danger[.]" Because this portion of MCL 777.38(1)(a) does not provide for consideration of conduct after the completion of the sentencing offense, it must be scored solely on the basis of Allen's conduct before or during the sentencing offense. *Barrera*, 500 Mich at 22.

Although Allen undeniably moved the victim to the hospital, this asportation occurred after the sentencing offense of assault with intent to commit great bodily harm less than murder had concluded. Specifically, the victim testified that the physical assault took place in their home when Allen threw a computer at her, strangled her, poked her with a knife in an upstairs bedroom, pushed her down several stairs and kicked her in the head and mouth in the living room. The victim testified that during the assault, Allen was acting like a "crazy person." This evidence formed the entire basis for the sentencing offense. When Allen stopped beating the victim, she suggested that they leave the home. At that time, Allen's sense of reason "came back," and he agreed to leave the house. It was at this moment that the sentencing offense of assault with intent to commit great bodily harm less than murder was over, and it was after the assault was completed that Allen transported the victim to the hospital and later to a hotel. Therefore, because the movement of the victim occurred after the sentencing offense was complete, the trial court erred by concluding that Allen's post-offense movement of the victim constituted asportation as contemplated in MCL 777.38(1)(a).

Indeed, even if we were not bound to follow *McGraw*, Allen argues that driving the victim from their home after the assault to a hospital does not constitute asportation "to a place of greater danger or to a situation of greater danger[.]" We agree.

Places or situations of greater danger include, but are not limited to, "places where others [are] less likely to see defendant committing crimes." *People v Steele*, 283 Mich App 472, 491; 769 NW2d 256 (2009). In this case, Allen drove the victim from a private home to a public hospital in search of medical attention for her injuries. This movement did not increase the danger to the victim; instead, it plainly reduced it. The evidence is that Allen beat the victim in their private home where there were no witnesses or people who could intervene. The victim was alone, isolated, and injured. Allen then drove the victim to a public hospital where she received CT scans,

the trial court adopted the prosecutor's arguments as well as the finding that Allen moved the victim to the hotel for purposes of asportation.

x-rays, stitches, and medical treatment from physicians who treated her injuries. When evaluating the phrase "to a place of greater danger or to a situation of greater danger," trial courts must consider whether the risk of danger to the victim is increased by the defendant's movement of the victim. Here it was not. Thus, the trial court erred when it assessed points for OV 8 in connection with asportation.[9]

## 2. CAPTIVITY

Nevertheless, the trial court could still assess 15 points for this OV if the victim "was held captive beyond the time necessary to commit the offense." MCL 777.38(1)(a). Unlike asportation, this clause allows a trial court to consider a defendant's conduct "beyond the time necessary to commit the offense." Thus, OV 8 requires the trial court to assess points for a defendant's post-offense conduct of holding a victim captive even after the completion of the sentencing offense. See *McGraw*, 484 Mich at 126.[10] Consequently, the trial court was required to evaluate whether Allen held the victim captive after he had completed the sentencing offense.

Because the term "captive" is not defined by the legislature, it is proper to consult dictionary definitions. *People v Laidler*, 491 Mich 339, 347; 817 NW2d 517 (2012) (quotation marks and citation omitted). "Captive" is defined as "kept within bounds" or "held under control of another." *Merriam-Webster's Collegiate Dictionary* (11th ed). "Control" is defined as "to exercise restraining or directing influence over[,]" and "influence" is defined as "the act or power of producing an effect without apparent exertion of force or direct exercise of command." *Id*. Thus, we hold that a victim is held captive under OV 8 when the defendant exerts either physical restraint[11] or psychological influence over the victim.

---

[9] When assessing points for OV 8, the trial court noted that Allen transported the victim "away from Saginaw County." We recognize that the trial court may have been referring to the practice of some domestic violence offenders of isolating their victims from family, friends, and resources. Although this can be a relevant consideration for purposes of scoring OV 8, in this case the only record evidence is that Allen took the victim to a hospital for medical treatment and chose this particular hospital to conceal her injuries from the victim's family. The trial court did not make any findings about how taking the victim from her home to a public hospital in another county put her at a greater risk of danger than remaining untreated and injured in her home.

[10] We note that, when interpreting the captivity portion of MCL 777.38(1)(a), this Court has considered whether the defendant held the victim captive *after* the sentencing offense was completed. For example, in *People v Bosca*, 310 Mich App 1, 52; 871 NW2d 307 (2015), this Court affirmed the trial court's decision to score OV 8 at 15 points where four individuals "were physically restrained while they were threatened and struck with fists and other implements after having been moved to, and after having their egress prevented from, the basement of [the] defendant's residence."

[11] This Court has previously concluded that OV 8 is properly scored at 15 points for the offense of unlawful imprisonment when the defendant physically restrained the victim for any amount of time after the imprisonment occurred because the defendant's physical restraint of the victim, even

-6-

In this case, the trial court did not make findings as to whether the victim was held captive. Because the record contains conflicting evidence concerning whether Allen held the victim captive beyond the time necessary to complete the offense of assault with intent to commit great bodily harm less than murder, we remand this scoring issue to the trial court to resolve.

Certainly, reasonable minds can differ regarding whether the victim was held captive. Allen argues that the victim was not in custody because the assault was over in the home and the victim was the one who asked to leave. Allen also argues that the victim cannot be found to be in custody when she was driven to a public hospital where she received medical treatment. However, the record could also support the conclusion that Allen held the victim psychologically captive from the time the assault ended until she escaped his control several days later in front of the courthouse. Evidence during trial supported that Allen had told the victim that he was taking her to a hospital, and she may not have had any choice in the matter. Allen then controlled the decision about medical treatment by choosing a hospital that would reduce the risk that anyone would recognize the victim. At the hospital, the victim testified that she was "completely traumatized and shocked" due to the assault and could not recall the exact details. But she testified that she believed that Allen never left her alone at the hospital; in fact, he even slept in the same hospital bed with her. After the victim was released from the hospital, Allen took her directly from the hospital to the hotel room, not to their home, where they remained for two days and where Allen denied her possession of her cell phone. It was not until Allen left her briefly alone in front of the courthouse that she fled and called her brother for help. Thus, there is also record evidence to support that the victim was held psychologically captive at the hospital and at the hotel during a continuous series of events that did not end until she was able to escape.

Nevertheless, because the trial court failed to make any factual findings on this issue, we remand this issue to the trial court to hold a hearing to consider whether the evidence supports that Allen held the victim captive beyond the time necessary to complete the offense of assault with intent to commit great bodily harm less than murder. After making this determination, the trial court shall assess the appropriate points for OV 8. If the relevant guidelines minimum sentence range is affected, the trial court must resentence Allen. *People v Francisco*, 474 Mich 82, 89; 711 NW2d 44 (2006).

### B. INEFFECTIVE ASSISTANCE OF COUNSEL

Allen argues that he is entitled to a new trial because trial counsel provided ineffective assistance for several reasons. "Whether a person has been denied the effective assistance of counsel is a mixed question of fact and constitutional law." *People v McCauley*, 287 Mich App 158, 162; 782 NW2d 520 (2010), rev'd on other grounds 493 Mich 872 (2012).

> A defendant must meet two requirements to warrant a new trial because of the ineffective assistance of trial counsel. First, the defendant must show that counsel's performance fell below an objective standard of reasonableness. In doing so, the

---

for a moment, was sufficient to constitute that offense. *People v Chelmicki*, 305 Mich App 58, 70; 850 NW2d 612 (2014).

defendant must overcome the strong presumption that counsel's assistance constituted sound trial strategy. Second, the defendant must show that, but for counsel's deficient performance, a different result would have been reasonably probable. [*People v Armstrong*, 490 Mich 281, 289-290; 806 NW2d 676 (2011) (citations omitted).]

## 1. PRIVILEGED RECORDS

Allen first argues that trial counsel was ineffective for failing to seek production of the victim's mental health records because the records were necessary to his defense. We disagree.

It is well established that "there is [generally] no right to discover information or evidence that is protected from disclosure by . . . privilege." MCR 6.201(C)(1). In *People v Stanaway*, 446 Mich 643, 649-650; 521 NW2d 557 (1994), our Supreme Court balanced the opposing interests of protecting the confidentiality of privileged records with a criminal defendant's right to obtain evidence necessary to his defense. The *Stanaway* Court held that "where a defendant can establish a reasonable probability that the privileged records are likely to contain material information necessary to his defense, an *in camera* review of those records must be conducted to ascertain whether they contain evidence that is reasonably necessary, and therefore essential, to the defense." *Id*. (emphasis added). The Court held, however, that a defendant's "generalized assertion of a need to attack the credibility of his accuser [does] not establish the threshold showing of a reasonable probability that the records contain information material to his defense sufficient to overcome the various statutory privileges." *Id*. at 650.

In this case, Allen does not dispute that the victim's psychiatric records contain privileged information and were protected under MCL 767.5a(2). Thus, Allen was only entitled to have the trial court conduct an *in camera* review of the victim's mental health records if he could "establish a reasonable probability that the privileged records [were] likely to contain material information necessary to his defense." *Stanaway*, 446 Mich at 649. Allen's affidavit supports that "about a week prior to April 21, 2017," the victim's psychiatrist informed Allen and the victim that the victim "needed to stay off Facebook because someone was manipulating her through Facebook[.]" Allen speculates, without factual support, that the victim's mental health records "would also reveal that whoever was manipulating her through Facebook, was controlling her and manipulating her to blame [Allen] for everything that happened to [the victim] on April 21, 2017." Allen makes this pronouncement despite the lack of any factual support that the victim's psychiatrist treated her after she was assaulted and made an evaluation that the victim's identification of Allen as her assailant was the product of someone controlling and manipulating her. Because Allen failed to establish a reasonable probability that the privileged records were likely to contain material information necessary to his defense, counsel's failure to make a meritless motion did not constitute ineffective assistance of counsel. *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) (stating that counsel is not ineffective for failing to raise a meritless argument).[12]

---

[12] Additionally, the absence of the victim's psychological records did not make it impossible for Allen to present a defense. Allen's defense at trial was that the victim falsely accused him of

## 2. MISSING WITNESSES

Allen argues that his trial counsel was ineffective for failing to call Dr. Hicks and Dr. Defriez as witnesses because their testimony would have undermined the victim's credibility regarding the assault and thereby provided Allen with a substantial defense to the charges. We disagree.

"Decisions regarding what evidence to present, whether to call witnesses, and how to question witnesses are presumed to be matters of trial strategy[.]" *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Defense counsel's failure to present certain evidence does not constitute ineffective assistance of counsel unless defendant has been deprived of a substantial defense. *People v Jackson (On Reconsideration)*, 313 Mich App 409, 432; 884 NW2d 297 (2015) (citation omitted). "A substantial defense is one that might have made a difference in the outcome of the trial." *People v Chapo*, 283 Mich App 360, 371; 770 NW2d 68 (2009) (quotation marks and citation omitted).

In this case, aspects of Dr. Hicks's and Dr. Defriez's testimony likely would have enhanced trial counsel's argument that the victim was not credible. However, defendant's trial counsel could have reasonably concluded that the absence of their testimony would not result in a fundamentally unfair trial. The victim testified that, although she was assaulted with a machete by Allen, she only suffered a "nick[]" to her shoulder and cuts on her hand that required stitches. The victim agreed on cross-examination that she was not given medical attention for the shoulder injury at the hospital, and the jury was able to view the machete and photographs of the injuries on the victim's shoulder and hand. Trial counsel also elicited from police that the machete recovered after the assault did not have blood on it and it appeared to be unused. Also acknowledged by police was that the victim's trial testimony that she was strangled and thrown down the stairs was inconsistent with the report that she made to the police after the assault. Trial counsel used the victim's prior inconsistent statements throughout the trial and her failure to identify Allen as her assailant at the hospital to undermine her credibility. Trial counsel further exploited the prosecutor's failure to present medical testimony about how the victim's wounds were treated at the hospital, urging the jury to use its common sense to conclude that the machete would have caused far more serious injuries than cuts on the victim's shoulder and hand. Finally, the trial court instructed the jurors to use their common sense when weighing and judging the evidence,[13] and jurors are presumed to

---

felonious assault and assault with intent to commit great bodily harm less than murder. During cross-examination of the victim, trial counsel impeached the victim with testimony that she gave at Allen's preliminary examination, and the victim and the victim's brother both acknowledged that Allen believed that the victim was being controlled through Facebook in the time leading up to the April 21, 2017 assault. During closing arguments, trial counsel argued that the victim lacked credibility because the statements she provided to law enforcement were not consistent with her testimony at trial and because her testimony concerning the assaults was not believable given the relatively moderate injuries the victim sustained. Consequently, because Allen was not deprived of a substantial defense, trial counsel's failure to seek disclosure of the privileged materials did not affect the outcome at trial, see *Armstrong*, 490 Mich at 289-290.

[13] See M Crim JI 3.5(9).

-9-

follow their instructions. *People v Gayheart*, 285 Mich App 202, 210; 776 NW2d 330 (2009). Because Allen was not deprived of a substantial defense, trial counsel's decision not to call Dr. Hicks and Dr. Defriez as witnesses at trial did not fall below an objective standard of reasonableness and counsel was not ineffective in this respect. See *Armstrong*, 490 Mich at 289- 290.

### 3. MISSING WITNESS INSTRUCTION

Allen next argues that his trial counsel was ineffective for failing to request a missing witness instruction under M Crim JI 5.12. We disagree. A missing witness instruction is given only when it can be shown that due diligence to produce the witnesses was not exercised. *People v Perez*, 469 Mich App 415, 420; 670 NW2d 655 (2003). In this case, trial counsel testified at the *Ginther* hearing that he informed the prosecutor during trial that he did not wish to call Dr. Hicks and Dr. Defriez because he did not believe that it would benefit the defense. Because trial counsel agreed that the prosecution was excused from producing the endorsed doctors, Allen has failed to show that trial counsel's failure to request a missing witness instruction was deficient. See *Ericksen*, 288 Mich App at 201.

### 4. PRIOR CONSISTENT STATEMENTS

Allen next argues that his trial counsel was ineffective for failing to object to testimony concerning statements that the victim made to Officer Harris and Detective Busch because such evidence constituted prior consistent statements that served to bolster the credibility of the victim.

In general, it is impermissible for a party in a criminal trial to bolster a witness's trial testimony using a prior consistent statement made by that witness. *People v Hallaway*, 389 Mich 265, 275-276; 205 NW2d 451 (1973). However, "[t]he admission of a prior consistent statement through a third party is appropriate if the requirements of MRE 801(d)(1)(B) are satisfied." *People v Jones*, 240 Mich App 704, 706; 613 NW2d 411 (2000).

At trial, prior statements that the victim made were admitted during the testimony of Officer Harris and Detective Busch. Allen does not explain on appeal how the prior statements were consistent with the victim's trial testimony. Moreover, to the extent that any portions of the statements were consistent with the victim's trial testimony, Allen fails to acknowledge that admission of the statements may have been proper in accordance with MRE 801(d)(1)(B).

Despite the fact that the victim testified at trial, the fact that Allen has repeatedly challenged the victim's credibility, and the trial court's reliance on MRE 801(d)(1)(B) when denying Allen's motion for a new trial, Allen does not address any of these requirements or explain why any consistent statements were inadmissible under MRE 801(d)(1)(B). Allen "may not simply announce a position or assert an error and then leave it up to this Court to discover and rationalize the basis for his claims, or unravel and elaborate for him his argument[]. . . ." *People v Bowling*, 299 Mich App 552, 559; 830 NW2d 800 (2013) (quotation marks and citation omitted). An appellant's failure to properly address the merits of his assertion of error constitutes abandonment of the issue on appeal. *People v Harris*, 261 Mich App 44, 50; 680 NW2d 17 (2004). Consequently, Allen's claim that his counsel was ineffective for failing to object is abandoned. See *id*.

## 5. OPINION TESTIMONY

Allen argues that trial counsel was ineffective for failing to object to Officer Harris's and Detective Busch's testimony when they testified about the behavior patterns of crime victims because the testimony bolstered the victim's credibility. We disagree.

At trial, Officer Harris was asked on direct examination if he asked the victim "about leaving or why she left or didn't call police[.]" In response, Officer Harris testified that he did not ask the victim that question and noted that he had participated in department-wide mental health training. Through this training, Officer Harris testified that he learned that

> victims in this situation, they have a number of responses, but the two main [responses are] either fight or flight and sometimes freeze, and that's a little less prevalent. . . . But, it tells you that in an instance your body just does whatever it needs to survive. So to her, maybe calling the police or running away would have been her death sentence and she did not want to die that night.

After Officer Harris acknowledged on cross examination that the victim had not reported to him that she had been strangled or thrown down the stairs, the following exchange occurred during redirect examination:

> *The Prosecutor*: Officer Harris, and we've touched on the situation with [the victim] and her version of events. Given your training, would you classify this, at least what you were told, the version of events, as something traumatic?

> *Officer Harris*: Yes.

> *The Prosecutor*: And I guess in your training that would create one of those three memory recalls that you had mentioned?

> *Officer Harris*: Yes, sir, it would.

> *The Prosecutor*: And those were fight or flight—

> *Officer Harris*: Yes, fight or flight, and the least prevalent is freeze.

During direct examination of Detective Busch, the following exchange occurred:

> *The Prosecutor*: And do you also have any training or background in like stress trauma or type of interviews with victims?

> *Detective Busch*: I do. Part of our training is interviewing victims of trauma, as well as just interviewing general mental health.

> *The Prosecutor*: And did you do a follow-up interview with [the victim]?

> *Detective Busch*: I did.

*The Prosecutor*: And during the course of that interview were you able to ascertain if this was a traumatic situation or not?

*Detective Busch*: I was. I mean, the training obviously dictates that, but, any situation like this is going to be a traumatic experience for the average individual. Waking up in that situation is not a good process. Even the way she presented in her statements to me though was typical of victims of a crime such as this. She presented in a typical way that a victim would say stuff, is how she was saying it to me, if that makes sense.

We conclude that Officer Harris's and Detective Busch's testimony was admissible pursuant to MRE 701, which provides the standard for lay opinion testimony. *People v Daniel*, 207 Mich App 47, 57; 523 NW2d 830 (1994). Officer Harris's and Detective Busch's opinions were based on their observations and training. Review of the record establishes that their testimony was rationally based on their perceptions of victims of trauma and was presumably helpful to provide the jury with a clear understanding of the victim's conduct. See MRE 701. Additionally, their testimony was not a "technical or scientific" analysis. Rather, their understanding of trauma and crime victims was acquired through training and experience. Thus, because Officer Harris's and Detective Busch's testimony was not improper, trial counsel was not ineffective for failing to make a futile objection. See *Ericksen*, 288 Mich App at 201 (holding that counsel is not ineffective for failing to make a futile objection).

Further, even if trial counsel's failure to object fell below the objective standard of reasonableness, Allen cannot establish that the result of the proceedings would have been different. See *Armstrong*, 490 Mich at 289-290. Officer Harris and Detective Busch were called as witnesses by the prosecutor, and the jury was aware that criminal prosecution against Allen was pursued. Consequently, even without Officer Harris's and Detective Busch's testimony, the jury surely understood that Officer Harris and Detective Busch believed that the victim was telling the truth. *People v Dobek*, 274 Mich App 58, 71; 732 NW2d 546 (2007) ("Given that [the detective] was called as a witness by the prosecutor and that a criminal prosecution against [the] defendant was pursued, the jurors surely understood that [the detective] believed that the victim was telling the truth even without the disputed testimony."). Lastly, after review of the record in its entirety, we find it doubtful that Officer Harris's and Detective Busch's brief references to the fact that the victim had suffered from a traumatic event and that her behavior was consistent with that of a crime victim would have resulted in a different outcome at trial. Accordingly, Allen cannot demonstrate that he was prejudiced by trial counsel's failure to object and he is not entitled to relief on this issue. See *id*.

### 6. LESSER INCLUDED OFFENSE INSTRUCTION

Allen argues that trial counsel was ineffective because he failed to request a jury instruction on simple assault as a lesser included offense. We disagree.

This Court has held that declining to request a particular jury instruction can constitute effective trial strategy. *People v Dunigan*, 299 Mich App 579, 584; 831 NW2d 243 (2013). Indeed, deciding what instructions to request falls within the wide range of discretion accorded to counsel. *Id*. Furthermore, this Court has specifically recognized that an all-or-nothing defense is

a legitimate trial strategy. *People v Nickson*, 120 Mich App 681, 687; 327 NW2d 333 (1982). When the defense trial strategy is to obtain an outright acquittal, an instruction or argument on a lesser offense may reduce the defendant's chances of acquittal. *People v Robinson*, 154 Mich App 92, 94; 397 NW2d 229 (1986).

In this case, Allen has not shown that trial counsel's decision not to request an instruction for simple assault was anything other than reasonable trial strategy. Trial counsel's actions at trial demonstrate his effort to convince the jury that the victim was not credible and that someone other than Allen caused her injuries. At the *Ginther* hearing, trial counsel testified whether to request a lesser included offense instruction was something he would usually discuss with clients. Although he did not recall discussing the matter with Allen, trial counsel recalled that Allen was very involved in his defense and that he adamantly denied that he assaulted the victim. Therefore, requesting an instruction on simple assault would have been inconsistent with the strategy of attempting to force an all-or-nothing verdict. Whether counsel's trial strategy was succesful does not render counsel's performance ineffective, nor does it overcome the presumption that counsel provided reasonable professional assistance. *People v Petri*, 279 Mich App 407, 412; 760 NW2d 882 (2008). This Court will not assess counsel's competence with the benefit of hindsight. *People v Dunigan*, 299 Mich App at 590; *People v Unger*, 278 Mich App 210, 242-243; 749 NW2d 272 (2008). Therefore, Allen is not entitled to relief based on this argument.

## 7. CUMULATIVE ERROR

Allen argues that he was denied a fair trial because of the cumulative effect of the alleged instances of ineffective assistance of counsel described earlier. This Court reviews a claim of cumulative error to determine whether the combination of alleged errors denied the defendant a fair trial. *Dobek*, 274 Mich App at 106. "The cumulative effect of several minor errors may warrant reversal even where individual errors in the case would not warrant reversal." *People v Knapp*, 244 Mich App 361, 388; 624 NW2d 227 (2001). The cumulative effect of the errors must have been "seriously prejudicial" in order to conclude that the defendant was denied a fair trial. *Id*. Moreover, "the cumulative effect of the errors must undermine the confidence in the reliability of the verdict before a new trial is granted." *Dobek*, 274 Mich App at 106. "Absent the establishment of errors, there can be no cumulative effect of errors meriting reversal." *Id*. Because Allen has failed to establish any errors, there can be no cumulative effect of errors requiring reversal. *Id*.

## C. GREAT WEIGHT OF THE EVIDENCE

Allen argues that the trial court improperly denied his motion for a new trial because the jury verdict was against the great weight of the evidence. We disagree.

We review a trial court's decision to deny a motion for a new trial for an abuse of discretion. *People v Abraham*, 256 Mich App 265, 269; 662 NW2d 836 (2003) (citation omitted). "It is well recognized that the threshold necessary for a judge to overrule a jury and grant a new trial is unquestionably among the highest in our law." *People v Bosca*, 310 Mich App 1, 13; 871 NW2d 307 (2015) (quotation marks and citation omitted).

-13-

In evaluating whether a verdict is against the great weight of the evidence, the question is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v Lemmon*, 456 Mich 625, 627; 576 NW2d 129 (1998). A verdict may be vacated only when it "does not find reasonable support in the evidence, but is more likely to be attributed to causes outside the record such as passion, prejudice, sympathy, or some extraneous influence." *People v DeLisle*, 202 Mich App 658, 661; 509 NW2d 885 (1993) (citation omitted). Absent compelling circumstances, the credibility of witnesses is for the jury to determine. See *Lemmon*, 456 Mich at 642-643.

Considering the victim's testimony, the evidence does not preponderate so heavily against the jury's verdict that it would be a miscarriage of justice to allow the verdict to stand. See *Lemmon*, 456 Mich at 627. Allen's great-weight argument essentially consists of an attack on the sufficiency of the evidence and an implication that the victim was not credible. However, the jury was to assess the weight and reliability of the circumstantial evidence and the credibility of witnesses. *Id*. at 643-644. Given that the testimony at trial cannot be said to have "contradict[ed] indisputable physical facts or laws" or to have been "so inherently implausible that it could not be believed by a reasonable juror," *People v Galloway*, 307 Mich App 151, 167; 858 NW2d 520 (2014), rev'd in part on other grounds 498 Mich 902 (2015) (quotation marks and citation omitted), we conclude that the jury's verdict was not against the great weight of the evidence. Consequently, the trial court's decision to deny Allen's motion for a new trial was not outside the range of reasonable and principled outcomes. See *Abraham*, 256 Mich App at 269.

We affirm Allen's convictions, but remand to the trial court for proceedings consistent with this opinion. We do not retain jurisdiction.


/s/ Thomas C. Cameron
/s/ Anica Letica
/s/ Michael F. Gadola